## LORENZ FRANZ

### *v.*

## JOHN J. ORTON *et al.*

1. SPECIFIC PERFORMANCE — *controlled by equity of the case.* On bill to enforce the specific performance of a contract, a court of equity will always exercise a discretion whether the relief shall be granted or refused, and that discretion will be controlled by the equity and justice of the case.

2. Where a party purchasing land of one clothed with the legal title has notice, actual or constructive, that another owns it, and that the vendor holds the legal title as a security for money owing him and others, he cannot be placed in a better position than the vendor, and a court of equity will refuse to enforce the specific execution of his contract of purchase.

3. NOTICE — *possession by tenant.* The actual possession of land by a party through his tenants is constructive notice of his rights in the same, whether legal or equitable.

APPEAL from the Circuit Court of Cook county; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

This was a bill in equity, filed by Lorenz Franz against John J. Orton, Joseph A. Sleeper and Henry K. Whiton, to compel

the specific performance of a contract for the sale of the S. E. qr. sec. 32, T. 37, R. 13 E. of the third principal meridian, in Cook county, Illinois. John Sheldon was admitted a party defendant on his application. The opinion of the court contains a statement of the material facts of the case.

Messrs. J. C. & J. J. KNICKERBOCKER, for the appellant.

Messrs. HOLDEN & MOORE, and Mr. J. J. ORTON, for the appellees.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

It appears that appellee Sheldon was the owner of the quarter section of land in dispute many years before this controversy arose; that he had resided on it, but in latter years had rented it to tenants, who lived upon and cultivated it, paying him rent therefor. In April, 1872, the land was rented to a farmer and his son, who resided on an adjoining farm, and they cultivated the place and used it for pasture. In the year 1870 Sheldon, becoming involved in litigation in regard to some mortgages on the land, and being unable to provide himself with means to prosecute the litigation, induced appellee Orton to undertake, as attorney, to represent his rights. He, whilst rendering these professional services, advanced some means. Orton employed Sleeper and Whiton as attorneys to assist in the litigation, and they advanced money and rendered services, for which they had not been paid.

Whilst the litigation was pending, Sheldon incumbered the land, and when the litigation was ended these attorneys found the land thus incumbered. It was then arranged that the land should be conveyed to Orton, who should pay off the incumbrances, and hold the land as security for his advances, etc. This was done with the understanding that Sheldon should, in a short time, sell the land to pay all advances and fees, and

save the balance to himself. It was expected thus to save something for Sheldon and his family.

Sheldon, it seems, had made several unsuccessful attempts to sell the land to appellant, but they were unable to agree upon the price. When these efforts were made the title was in fact in the name of Orton, who had purchased the land under execution against Sheldon, and also a tax title on the land. Osborn was anxious to get his money, but was willing that the land should be sold for its value, and that Sheldon should have any surplus over the amount he held in the land. Hence they, in the winter of 1872, offered to sell to appellant, with the result stated.

Osborn being unwilling to give further time, Orton was induced to advance the money, and take up Osborn's title, with the understanding as before stated. Sheldon seems to have regarded the land as worth $100 per acre; but appellant only offered $42 per acre. On the 30th day of April, 1872, Orton, having come to Chicago from Milwaukee, where he resided, and being anxious to obtain his money by a sale of the land, was directed to appellant as a probable purchaser, and having found him, they met at the office of Sleeper & Whiton, and after some negotiation Orton agreed to sell the land to appellant for $7,000, of which $50 was paid at the time, $3,950 was to be paid as soon as a deed should be tendered and the abstract of title was found to be satisfactory, and by the 10th of May, 1872, at the farthest, and the balance to be paid in one and two years in equal installments, with eight per cent interest, to be secured by mortgage or trust deed on the premises. Orton gave to appellant a written receipt specifying the terms of the sale.

Orton testified that he expected to have had Sheldon meet with them, but he was unable to find him. He also testified that he informed appellant that the carrying out the trade must depend upon the approval of Sheldon. This, appellant denies. That appellant represented to him that Sheldon would be satisfied, as he had offered the land to him at $44 per acre, and this is also denied by appellant. He testified that he asked Orton

whether Sheldon had any claim to the land, and that Orton told him he had not, and this is denied by Orton. He claims that appellant made untrue representations in reference to the quality of the land, but this he denies.

Sheldon, it seems, did not learn of this sale until some time afterwards, and refused to ratify it. and subsequently, about the first of September, 1872, tendered back the $50 paid to Orton, with interest on the same, but it was refused. Some three or four·days after the agreement with Orton, appellant went out to see the farm, and found Sheldon's tenants in possession, and on his return to the city he placed his receipt on record. Some time in the following winter appellant took possession of the land without the consent of either of appellees, and before the expiration of the lease held by Sheldon's tenants.

He subsequently filed this bill, asking for a specific performance of the agreement. The bill was filed against Orton and Sleeper & Whiton. But Sheldon petitioned the court to be permitted to come in as a party and defend the suit. This the court very properly allowed, and Sheldon filed an answer, setting up all of the facts relied upon as a defense. A hearing was had, when the court below refused the relief, and dismissed the bill. Complainant brings the case to this court on appeal, and asks a reversal on the ground that the evidence shows that the relief should have been granted.

We find this record is very voluminous, containing a large amount of testimony having no bearing on the issues involved. But we have examined it with care and shall proceed to announce the conclusions it has induced us to reach. From the testimony it is apparent that. Orton was clothed with the evidence of title to the premises. But, all of the evidence considered, we are clearly of the opinion that Orton only held the land as security for the advances made by him and by Sleeper & Whiton; that Sheldon had the equitable right to the land, subject to the incumbrances. And as he was in possession of the land, appellant is chargeable with notice of all his rights when he purchased.

There is no controversy that Orton held the evidence of legal title to the land. There was a regular chain of title from the government to him, and a purchaser from him without notice, or not chargeable with notice, would have acquired the title freed from latent equities. This is the well-recognized rule in all courts. But the doctrine is equally firmly established that a purchaser taking with knowledge of such equities, or under circumstances and knowledge of facts that would put a prudent man on inquiry were he to be liable to suffer loss if the facts were not discovered, are held to charge him with notice, and he takes subject to such equities. The reports of our court and those of the British and of the various courts of the States of the Union are full of adjudged cases announcing these rules. They are so familiar to the entire profession that it is deemed entirely useless to refer to them.

It is, however, urged that evidence of Sheldon's equities is not in writing, but exists only in parol. This is true, but on a bill to enforce a specific performance a court of equity will always exercise a discretion whether the relief shall be granted or refused, and that discretion will be controlled by the equity and justice of the case. A performance will not be decreed where it will work hardship or injustice. A party asking equity must do equity. If appellant knew that Sheldon, in equity, owned the land and Orton only held it as security for the money owing him, and it was in the nature of a mortgage, he could not, in equity, be placed in a better position than Orton, and it would be unjust to compel a performance of the agreement. And parol evidence is admissible to prove the defense and prevent the decree for a performance of the agreement. This forms an exception to the general rule.

That he was informed that Sheldon had a claim to the land we think does not admit of a doubt. Sheldon and Osborn had, a few months previous to his purchase, offered to sell the land to him, but they failed to agree upon the price. Sheldon testifies that he then apprised appellant of his interest in the land. And as an evidence that he knew of the claim he testified on

the hearing that at the time the agreement was entered into he asked Orton if the land was free from claim by Sheldon. If not apprised that he had such a claim why ask the question? This simple question sheds floods of light on this question of notice. Having had the notice, it was his duty to have made inquiry of Sheldon as the true and proper source of information, and failing to do so he must abide the effects of the false information, if he in fact received such, as he says he did, which may be reasonably doubted. He failed to trace his information to its source and must abide by the effects of his negligence.

But even if he did not have actual notice he had constructive notice. The premises he was purchasing were in the open and visible possession of the tenants of Sheldon, and had he applied to them, as he did a few days later, he could then have learned, as he afterwards did, that they were in under a lease from Sheldon, and having learned that, he would only have been required to see Sheldon and have learned the claim he held on the land. This possession by Sheldon, then, charged him with notice of all of his rights, whether legal or equitable ; and such knowledge is as effectual as though the contract had been reduced to writing and placed upon record. This has been the doctrine of this court for a long period of time and announced in numerous decisions. *McConnell* v. *Reed,* 4 Scam. 117; *Doyle* v. *Teas,* ib. 202; *Powell* v. *Jeffries,* ib. 387; *Rupert* v. *Marks,* 15 Ill. 540; *Pittman* v. *Gaty,* 5 Gilm. 186; *Keys* v. *Test,* 33 Ill. 316; *Truesdale* v. *Ford,* 37 ib. 210; *Reeves* v. *Ayers,* 38 ib. 418; *De Wolf* v. *Pratt,* 42 ib. 198, and *Warren* v. *Richmond,* 53 ib. 52. These cases announce the rule in various forms and under different circumstances.

In this view of the case it is not necessary to review the evidence critically to determine whether credit should be given to appellant or to Orton in their very conflicting testimony; or whether Whiton corroborates either in his rather indefinite testimony. We regard the evidence as ample to prove that Sheldon held the equitable title to the land, subject to the payment of the claims of Orton and Sleeper and Whiton; that

appellant was fully apprised of the nature and extent of his claim, or if not, that he was chargeable with notice thereof, and hence purchased subject to that claim, and has failed to show that he has a right to have his agreement with Orton specifically performed, and that there is no error in this regard.     The decree of the court below must be affirmed.

*Decree affirmed.*