(No. 34688.—)

RAYMOND S. SCHIFF, Appellant, *vs.* MARGARET BREITEN-BACH *et al.,* Appellees.

*Opinion filed September 18, 1958—Rehearing denied Nov. 14, 1958.*

BERNSTEIN AND LEBIN, and RUSSELL J. TOPPER, both of Chicago, (JEROME H. GERSON, of counsel,) for appellant.

CONCANNON, DILLON, SNOOK & MORTON, of Chicago, (CASSIUS A. SCRANTON, of counsel,) for appellees.

Mr. CHIEF JUSTICE DAILY delivered the opinion of the court:

On June 22, 1955, a suit for specific performance was commenced in the circuit court of Cook County by the vendee, Raymond S. Schiff, against Margaret Breitenbach, vendor, to compel the conveyance of four unimproved city lots located in Evanston. Thereafter a separate action was filed in the same court on behalf of the State to foreclose certain tax liens against this and other property, and, in response to this latter proceeding, Helen F. Puls, Richard Puls, and John L. Puls entered appearances therein as alleged owners of the Breitenbach tract. In November, 1955, the defendant Breitenbach was adjudged mentally ill and a guardian *ad litem* was appointed to represent her

in both of the above mentioned actions. By order of court the two proceedings were subsequently consolidated and, upon hearing, the court found the defendants Puls to be the equitable owners of the property, ordered legal title conveyed to them by a master in chancery, and dismissed the specific performance complaint for want of equity. Although no final decree was rendered as to the tax fore-closure matters, an order was duly entered finding no just reason for delay, and as a result thereof direct appeal has been taken to this court to review the specific performance decree.

The record indicates that Helen F. Puls is the mother of Richard Puls and John L. Puls, and that on May 29, 1940, they each owned an undivided one-third interest in the subject property. Because the former son then lived in New Jersey and the latter was expecting to enter mili-tary service, and to facilitate a contemplated sale of these premises, the parties on that date executed, without con-sideration, a warranty deed for the tract to Margaret Breitenbach, sister and aunt of the respective grantors and an Evanston resident. At the same time, the grantee de-livered back to them a quitclaim deed to the identical real estate. Only the warranty deed was subsequently recorded, and in 1950 the defendants Puls all moved to Florida. In December, 1954, Thomas Mason, a real-estate salesman, after checking the public records as to ownership, contacted Margaret Breitenbach, a 77-year-old widow, for the pur-pose of listing the property for sale. According to his testimony, he at that time told her that he had recently sold two similar lots across the street for $1,000 each, whereupon she authorized him to seek a purchaser. Mason subsequently acquired from plaintiff a written offer to purchase the four lots, subject to unpaid taxes and special assessments, for the total amount of $4,000, and at a sub-sequent meeting with Margaret Breitenbach at her apart-ment on February 28, 1955, procured her written accept-

ance thereof. The contract provided for $800 earnest money, which was deposited by plaintiff with the real-estate firm, and specified that closing should be had not later than April 15, 1955, unless title defects were discovered, in which event the seller was to have an additional thirty days to remedy the situation. On March 10, 1955, Mason received a report of title showing certain outstanding encumbrances and upon contacting the vendor was referred to William Dillon, a Chicago attorney who had been a friend of both the vendor and the Puls for many years and who had knowledge of the arrangement under which she held title to the premises. Some 15 days later Mason met with Dillon and was then advised that Margaret Breitenbach had no authority to sell and that the deal would not be consummated. When this fact was later communicated to the plaintiff, he telephoned Dillon and unsuccessfully offered to take title subject to the encumbrances. Suit was thereafter begun to enforce the agreement.

At the trial of this cause considerable evidence was introduced concerning both the transaction itself and the vendor's competence. Margaret Collins, who lived in the same apartment building with the vendor, testified that they were friendly and that she had seen her nearly every day for the past several years. According to her account the vendor appeared normal until about October, 1954, at which time she became prone to falls and began to do abnormal things. Although she had a limited income, the vendor frequently ordered several suits, pairs of gloves, or other items of clothing at the same time; would walk downstairs in expensive clothing and accessories but with her dress all open; ordered and drank wine in excessive amounts; and wrapped the empty bottles in linen dinner napkins before placing them in the garbage. Once the witness observed 48 empty wine bottles in the Breitenbach garbage at the same time, and from December, 1954, to May, 1955, the vendor drank every day and was frequently

hysterical during the night. Based upon these observations, this witness was of the opinion that during the months of January, February, and March of 1955, the vendor was not able to understand the contents of a legal document.

Warran Clohisy, a physician, testified that he examined Margaret Breitenbach in May, 1955, found her to be suffering from a presenile psychosis, and recommended her commitment to a rest home. At that time she thought the doctor was her husband and spoke frequently of doing things that she obviously had not done. From his knowledge of such mental disease and his medical observations, this witness was of the opinion that she might not have been able to execute a legal document on February 28, 1955.

The defendant, John L. Puls, told of telephone conversations which he had with the vendor during 1954 and 1955 and said that although he could tell on occasions that she had been drinking, he did not believe her to be insane. However, when he saw her on June 10, 1955, she could not walk and was disoriented as to time and place. William Dillon, the attorney, stated that he received telephone calls from the vendor during the latter part of 1954 and early 1955 in which she complained that "the real estate people were pestering her on those lots" despite her instructions to contact Dillon directly. He stated that in his opinion Margaret Breitenbach was incompetent at the time the contract was signed and that the owner's equity in the property was worth $10,000 to $12,000. Thomas Mason, the real-estate salesman, admitted upon examination that the Breitenbach land was worth $9700, unencumbered, and that subsequent to this transaction he sold a single lot of similar size across the street for $2350.

The sole question presented here is whether the vendee is entitled to specific performance of the real-estate contract. It is well established that the granting of such equitable relief is not a matter of right but rests in sound judicial discretion to be determined from the facts and

circumstances of each individual case, (*Young* v. *Kowske*, 402 Ill. 114; *Morris* v. *Curtin*, 321 Ill. 462; *Anson* v. *Haywood*, 397 Ill. 370; *Faulkner* v. *Black*, 378 Ill. 112,) and where such enforcement would be inequitable or unconscionable, or where misrepresentations, unfairness, or superior advantage were responsible for the agreement, the remedy will be denied. (*Favata* v. *Mercer*, 409 Ill. 271; *Franz* v. *Orton*, 75 Ill. 100.) Here the uncontroverted evidence indicates that during the period of negotiation, and both prior and subsequently thereto, the vendor, a 77-year-old widow, drank wine almost constantly, was frequently hysterical during the nights, and acted in an abnormal manner. Less than three months later she was found to be suffering from an advanced mental condition for which she was committed to Manteno State Hospital. In this respect the case is somewhat similar to *Kukulski* v. *Bolda*, 2 Ill.2d 11, where we refused to enforce a contract against a vendor who suffered from excessive drinking and the resulting mental deterioration, and in which we stated that, as a matter of common knowledge, courts recognize the effect of such behavior upon the faculties of body and mind. Furthermore, it appears the tract was worth considerably more than the stated purchase price, and although the real-estate salesman represented to the vendor that lots in the vicinity were selling for approximately $1,000 each, there was evidence at the trial that he had subsequently sold a similar lot across the street for $2,350. While the inadequacy of consideration does not in and of itself constitute grounds for denial of specific performance, it is a factor which must be considered with the other circumstances to determine whether the agreement was entered into with complete fairness. (*Kukulski* v. *Bolda*, 2 Ill.2d 11.) Because of the inadequate consideration and the evidence of vendor's physical and mental condition at the time the contract was signed, it is our opinion that it would be unconscionable to enforce the agreement as prayed in

the complaint. In his brief to this court, plaintiff places much reliance upon the Puls's failure to record their quitclaim deed so as to notify the general public of their interest. In the view we have taken of this matter such failure becomes immaterial.

For the reasons stated, the decree of the circuit court of Cook County is affirmed.

*Decree affirmed.*