CURTIS CASKET COMPANY, Plaintiff-Appellant, v. D.A. BROWN AND COMPANY, Defendant-Appellee.

First District (2nd Division) No. 1—91—3531

Opinion filed March 29, 1994.

McCracken & Walsh, of Chicago (Thomas G. Moffitt and Andrew J. Anderson, of counsel), for appellant.

Burfeind & Schlickman, Ltd., of Arlington Heights (Eugene F. Schlickman, of counsel), for appellee.

JUSTICE HARTMAN delivered the opinion of the court on rehearing:

Plaintiff, Curtis Casket Company (Curtis), owner and proposed seller of certain real estate, filed a complaint against defendant, D.A. Brown & Company (Brown), putative buyer, for specific performance of their real estate contract. Brown moved to dismiss the complaint, purportedly pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—615 (now 735 ILCS 5/2— 615 (West 1992)) (section 2—615)), alleging insufficiency in law. The circuit court granted the motion. On appeal, we affirmed in a Supreme Court Rule 23 order (134 Ill. 2d R. 23), but subsequently granted Curtis' petition for rehearing and vacated the earlier order. We now reverse and remand for reasons which follow.

The issues presented for review on rehearing are whether (1) the circuit court erred in dismissing Curtis' action for specific performance; and (2) Brown's April 8, 1991, letter constituted an unjustified repudiation of the contract which excused timely performance by Curtis.

Curtis' complaint alleged that on March 26, 1991, Curtis and Brown executed a contract for the sale and purchase of the subject real estate located at 2350 West Ogden Avenue in Chicago, for $575,000. The contract, a copy of which was attached to the complaint as an exhibit, set forth the closing date as the later of either (1) April 5, 1991, or (2) 35 days after the delivery of a title insurance commitment disclosing removal or correction of unpermitted exceptions, or title insurance covering such exceptions. Curtis was given 30 days from the date of delivery of a title commitment showing unpermitted exceptions to have the latter removed or provide insurance covering such exceptions. The contract provided that time was of the essence. By a letter dated April 8, 1991, Brown informed Curtis that because of an exception in the title commitment, namely, an alley in the rear of the subject property over which a passageway and under which a tunnel are maintained will not be insured; and because the sprinkler system on the subject property is serviced by water from a building not covered by the contract, Brown "has no desire to proceed with the sales contract ***, declares it void and demands return of its earnest money deposit." Nevertheless, on May 23, 1991, Curtis tendered a deed and related documents to Brown and demanded consummation of the contract. Brown refused.

Curtis further alleged it had performed all the necessary

conditions of the contract; was not in default; did all the acts necessary to close the transaction; "stands ready, willing and able to complete its performance *** and close the transaction"; and had no adequate remedy at law. Curtis sought court-ordered specific performance of the contract.

Brown filed its appearance without a jury demand. Thereafter, Brown moved to dismiss the complaint, allegedly pursuant to section 2—615, averring that on March 18, 1991, it received a title insurance commitment ordered by Curtis which contained three unpermitted title exceptions, and attached a copy of the commitment with its exceptions as an exhibit. By the terms of the contract, performance was contingent upon the removal of the title exceptions by April 17, 1991, and the closing date then became April 22, according to Brown. Curtis failed to tender performance until May 25, 1991, the untimeliness of which assertedly defeated Curtis' claim to specific performance. Brown also alleged that the complaint was substantially insufficient in law, but identified no deficiencies.

Curtis filed a response to the motion to dismiss, with supporting affidavits, claiming that Brown's April 8, 1991, letter constituted an anticipatory breach of contract which "made the date of plaintiff's tender of performance irrelevant." Attached was a copy of the April 8 letter. Curtis asserted that the claims set forth in that letter were insufficient to terminate the contract. More specifically, Curtis averred that two title commitments were issued, necessitated by the failure of the March 18 commitment to mention a parking lot, which was part of the subject property. A subsequent, corrective commitment was issued on March 25. Therefore, under the contract terms, it had until April 24 to clear unpermitted title exceptions and the closing date became April 29. Curtis then alleged that the title exception concerning the alley did not relate to the subject real estate; the sprinkler system had been installed by a previous owner who then owned both buildings, had been fully functional for over 43 years, passed its last city inspection, and complied with all municipal ordinances; Brown had inspected the property before entering into the contract; and Curtis had made no representation to Brown about the water source for the sprinkler system. Further, Curtis maintained, the title insurance exception relating to the alley was waived by the insurer.

Brown filed a reply, with supporting affidavits, averring that the contract was void because of Curtis' untimely tender of performance. Brown, upon receiving notice of the title insurance exception, was advised by Curtis' attorney that the sprinkler system was serviced by water from an adjoining building not owned by Curtis. Brown secured

an estimate of $40,000 as the cost of acquiring an independent water source for the building, which it offered to split equally with Curtis. Curtis refused. Brown asserted that Curtis was not entitled to specific performance under the facts of this case.

On October 2, 1991, the circuit court conducted a hearing on Brown's motion to dismiss the complaint for specific performance. Brown's counsel argued that the remedy of specific performance was not a matter of right, but rather rests within the court's sound discretion. While investigating the title insurance exception, Brown learned that the water source for the sprinkler system was from an adjoining building, not owned by plaintiff, and that no easement was provided. Brown also maintained that Curtis' tardy tender of performance should bar the remedy of specific performance. Curtis, in response, urged that Brown's April 8 letter constituted an anticipatory breach of the contract, which thereby excused timely tender of performance.

The circuit court granted the motion to dismiss the complaint for specific performance, finding that Brown did not waive the contractual provision making time of the essence through its April 8 letter and that the sprinkler system constituted a "very significant defect." The court later granted Curtis leave to file an additional count seeking monetary damages for breach of contract, which apparently is still pending in the circuit court. The court found no just reason to delay enforcement or appeal of the specific performance count. 134 Ill. 2d R. 304(a).

I

The standard of review on appeal from a motion to dismiss a complaint under section 2—615 is whether the complaint sufficiently states a cause of action; the merits of the case are not at issue. (*McCormick v. Kruk* (1991), 220 Ill. App. 3d 449, 451, 581 N.E.2d 73.) Only the pleadings are considered in such a motion. (*Shugan v. Colonial View Manor* (1982), 107 Ill. App. 3d 458, 460, 437 N.E.2d 731.) All well-pleaded facts in the complaint must be taken as true with all inferences from it to be drawn in favor of the nonmovant. (*Meerbrey v. Marshall Field & Co.* (1990), 139 Ill. 2d 455, 473, 564 N.E.2d 1222.) A motion to dismiss, however, does not admit conclusions of law or fact which are unsupported by allegations of specific facts warranting such conclusions. *Groenings v. City of St. Charles* (1991), 215 Ill. App. 3d 295, 299, 574 N.E.2d 1316.

In the case *sub judice*, however, both parties have disregarded the office of a section 2—615 motion. Affidavits may not be considered in a section 2—615 motion to dismiss, which challenges the facial suf-

ficiency of the pleading; in contrast, such affidavits may be utilized in support of a section 2—619 motion (Ill. Rev. Stat. 1991, ch. 110, par. 2—619 (now 735 ILCS 5/2—619 (West 1992)) (section 2—619)). (See *Smith v. Chemical Personnel Search, Inc.* (1991), 215 Ill. App. 3d 1078, 1081-82, 576 N.E.2d 340; *MBL (USA) Corp. v. Diekman* (1985), 137 Ill. App. 3d 238, 242, 484 N.E.2d 371.) Under the circumstances of this case, absent prejudice, in the interest of judicial economy, the motion will be considered as having been filed and decided under section 2—619. *Smith*, 215 Ill. App. 3d at 1081-82; *Sutton v. Mytich* (1990), 197 Ill. App. 3d 672, 676, 555 N.E.2d 93; *MBL (USA) Corp.*, 137 Ill. App. 3d at 242.

■ Section 2—619 provides a vehicle through which issues of law or easily proved issues of fact may be determined. (*Chicago Steel Rule Die & Fabricators Co. v. Malan Construction Co.* (1990), 200 Ill. App. 3d 701, 708, 558 N.E.2d 341 (*Malan*).) It is a defendant's motion, that is to say, such a motion, by utilizing one or more of the grounds prescribed by section 2—619, claims that the challenged pleading and action must be dismissed by virtue of affirmative matters which entirely avoid the effect of or defeat the cause of action under scrutiny. (*A.F.P. Enterprises, Inc. v. Crescent Pork, Inc.* (1993), 243 Ill. App. 3d 905, 912, 611 N.E.2d 619.) Importantly, where the affirmative matter is merely evidence which the movant expects to submit in contesting an ultimate fact contained in the contested pleading, section 2—619 may not be invoked. (*Connelly v. Estate of Dooley* (1981), 96 Ill. App. 3d 1077, 1082, 422 N.E.2d 143.) In a chancery case, the circuit court may exercise its discretion in choosing to grant or deny equitable relief in deciding such a motion (*North Park Bus Service, Inc. v. Pastor* (1976), 39 Ill. App. 3d 406, 410, 349 N.E.2d 664; see *In re Marriage of Musa* (1982), 103 Ill. App. 3d 189, 192-93, 430 N.E.2d 727); when such a course is followed, as it was in the present case, both the law and facts are subject to review on appeal and the circuit court's order will be reversed if it is clearly against the manifest weight of the evidence. *Etten v. Lane* (1985), 138 Ill. App. 3d 439, 443, 485 N.E.2d 1177.

II

■ Where a specific and unambiguous written contract for the sale of real estate has been entered into fairly and understandingly, each party is entitled to specific performance of the contract as a matter of right. (*Young v. Kich* (1938), 369 Ill. 29, 34, 15 N.E.2d 692; *Cole v. Ignatius* (1983), 114 Ill. App. 3d 66, 75, 448 N.E.2d 538.) Nevertheless, the circuit court possesses discretion to deny specific performance where there is some substantial element in the case which

moves the conscience of the court and makes it appear unjust to grant the relief sought. (*Schiff v. Breitenbach* (1958), 14 Ill. 2d 611, 615-16, 153 N.E.2d 549; *Neuberg v. Clute* (1955), 6 Ill. 2d 58, 63-64, 126 N.E.2d 648; *Mid-Town Petroleum, Inc. v. Dine* (1983), 114 Ill. App. 3d 112, 119, 448 N.E.2d 596.) Curtis insists that no bases for dismissing its complaint exist here.

### A

In addressing the circuit court's finding that Brown did not waive the contractually prescribed time for performance, Curtis sets forth a two-prong argument: that Brown repudiated the contract and, that, in light of the repudiation, Curtis was excused from tendering timely performance.

■ An anticipatory repudiation is a definite statement by one contracting party to the other that it will not perform its contractual duties, unless such statement is justified. (*Builder's Concrete Co. v. Fred Faubel & Sons, Inc.* (1978), 58 Ill. App. 3d 100, 104, 373 N.E.2d 863; see *B&C Electric, Inc. v. Pullman Bank & Trust Co.* (1981), 96 Ill. App. 3d 321, 328, 421 N.E.2d 206.) Brown's April 8 letter declaring the contract void for the reasons stated therein evinced its clear intent not to proceed with the contract and demanded the return of its earnest money. The question to be answered is whether such refusal was justified.

Brown's position is that its refusal was remissible by virtue of the title insurance exception relating to the alley, and because the water for the property's sprinkler system would have to be supplied by an adjacent building. With regard to the title insurance exception, however, according to the real estate contract, the plat of survey and the unrebutted affidavit of Curtis' president, the alley did not relate to the real estate in question. Therefore, Curtis was under no duty to clear the title exception.

Curtis correctly concludes that it was not required to tender performance because of Brown's unjustified repudiation of the contract on this point.

### B

■ Brown maintains that the defective sprinkler system is a sound basis for denial of specific performance. Curtis' position is that the sprinkler system provides no justification for Brown's repudiation of the contract, nor any basis for the denial of specific performance.

When considering the merits of a section 2—619 motion, although the circuit court may decide easily proved issues of fact (*Malan*, 200 Ill. App. 3d at 708), it should not decide disputed factual issues pre-

sented solely by affidavits and counteraffidavits (*Premier Electrical Construction Co. v. La Salle National Bank* (1984), 132 Ill. App. 3d 485, 493, 477 N.E.2d 1249; *Dickman v. Country Mutual Insurance Co.* (1983), 120 Ill. App. 3d 470, 472, 458 N.E.2d 199), or issues upon which no viable evidence has been presented, as in this case.

The principal dispute that emerged from the affidavits submitted in support of and in opposition to the motion to dismiss on this point was the effect of selling property fully equipped with an operative sprinkler system, but reliant upon permission of the water source owner, the possessor of adjacent property, to turn the water on. The real estate contract signed by the parties does not mention the necessity for providing either a sprinkler system or a water source. It is not shown as an exception in the title commitment.

In his affidavit, the attorney for Curtis states that "this type of water supply system is not uncommon in older Chicago industrial buildings." The president of Curtis asserts in his affidavit that no governmental inspection has ever found this arrangement to be in violation of any building, fire or other code, although the property has been inspected on an annual basis. Brown's reply contains the statement that "[i]n Chicago, with its tragic record of fires, an independent source of water for a sprinkler system is as basic as one could get." Nowhere in this record has any evidence been produced as to the necessity for providing an independent water source for a sprinkler system, nor, conversely, has either party demonstrated that such a source is not necessary. Although it is suggested that such a circumstance is not uncommon in older industrial buildings, no basis for this observation is set forth.

Nevertheless, the circuit court found, on this state of the record, "that the sprinkler system, that is a very significant defect." Upon trial of this issue, the absence of an independent water source may well be proven as a substantial defect; however, there was no evidence before the court to support its conclusion and the cause must be reversed and remanded for an evidentiary hearing on this point.

## C

■ An actual tender before filing suit for specific performance is unnecessary where a defendant has repudiated the contract. (*Regan v. Garfield Ridge Trust & Savings Bank* (1991), 220 Ill. App. 3d 1078, 1087, 581 N.E.2d 759; *Moehling v. Pierce* (1954), 3 Ill. 2d 418, 423, 121 N.E.2d 735.) Although actual tender is not required, plaintiff must show it is ready, willing, and able to perform its part of the agreement. (*Moehling*, 3 Ill. 2d at 423.) "It should be enough to allege and prove that had it not been for the repudiation, [the nonrepudiat-

ing party] would have performed or been ready and willing to do so." (11 S. Williston, Contracts § 1334, at 177 (3d ed. 1968).) In addition, where time is made the essence of the contract it is necessary for one seeking specific performance to show that everything required has been done within the time specified. *Brown v. Jurczak* (1947), 397 Ill. 532, 540, 74 N.E.2d 821.

Here, Curtis was required to allege in its pleadings that it was ready, willing, and able to perform its part of the contract, including the provision that time was of the essence. In its complaint, Curtis did allege that it had performed all the necessary conditions of the contract; was not in default under the contract; did all the acts necessary to close the transaction; "stands ready, willing and able to complete its performance *** and close the transaction"; and had no adequate remedy at law.

Curtis' complaint sufficiently stated a cause of action for specific performance. The dismissal of its complaint is manifest error and must be reversed. Accordingly, the dismissal of Curtis' complaint is reversed and the cause remanded for trial.

Reversed and remanded.

DiVITO, P.J., and SCARIANO, J., concur.