DONNA BRADTKE, Indiv. and as Special Adm'x of the Estate of Joseph Bradtke, Deceased, Plaintiff-Appellant, v. WILLIAM REOTUTAR *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—89—0928

Opinion filed May 20, 1991.

Donald A. Shapiro, of Chicago, for appellant.

French, Rogers, Kezelis & Kominiarek, P.C., of Chicago (Alfred C. Tisdahl, Jr., Russell P. Veldenz, and Daniel C. Hofert, of counsel), for appellees.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff Donna Bradtke, as special administratrix for the estate of decedent Joseph Bradtke, appeals an order of the circuit court of Cook County granting defendant Dr. Paulinio Sevilla's motion to dismiss count IV of plaintiff's third amended complaint, which was based on the Survival Act (Ill. Rev. Stat. 1987, ch. 110½, par. 27—6), and which alleged medical malpractice. For the reasons which follow, we reverse and remand for further proceedings.

The facts giving rise to this appeal are as follows: In September 1984, decedent retained the services of defendant Dr. William Reotutar in regard to decedent's complaints of leg pain, chest pain and shortness of breath. Dr. Reotutar ordered X rays. The radiologist noted a right perihilar mass and recommended that more chest X rays be taken. Dr. Reotutar did not order additional X rays at this time and prescribed medication for decedent's pain instead. On October 16, 1984, decedent returned to Dr. Reotutar with the additional complaint of decreased appetite and weight loss.

In January 1985, Dr. Reotutar ordered additional X rays on two separate occasions. These X rays were read and interpreted by defendant Dr. Paulinio Sevilla. Plaintiff alleges that nothing happened as a result of this second set of X rays.

In May 1985, decedent sought a second opinion. In addition to the pain and weight loss, decedent also complained of a fever at this time. This physician, whose name was not identified by the parties, diagnosed decedent with Hodgkin's disease. Decedent passed away on July 31, 1986.

According to defendants, plaintiff filed a complaint against Dr. Reotutar on March 17, 1988. This initial complaint is not in the record. On April 14, 1988, plaintiff filed an amended complaint which named Dr. Sevilla as a defendant and which included the affidavits of plaintiff's attorney and a health professional, along with a written report concerning Dr. Reotutar's conduct, pursuant to section 2—622 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—622). On November 10, 1988, plaintiff filed a third amended complaint which included the allegation that she was unaware of Dr. Sevilla's involvement in decedent's treatment until June 8, 1987.

Defendant Dr. Sevilla moved to dismiss the third amended complaint, asserting the two-year statute of limitations for medical malpractice actions (Ill. Rev. Stat. 1987, ch. 110, par. 13—212) as a defense. At a hearing on the motion, Dr. Sevilla withdrew the motion to dismiss as it applied to plaintiff's wrongful death action, but maintained the motion as it applied to the survival action. The trial court granted the motion to dismiss the survival action, holding that the statute of limitations began to run when decedent was properly diagnosed in May 1985. Therefore, the limitations period would have elapsed in May 1987. The limitations period would be extended to July 31, 1987, pursuant to section 13—209 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 13—209), which allows a representative to bring an action which survives a decedent either within that action's limitations period or within one year of decedent's death. Plaintiff did not file suit until 1988 and thus the trial court held that the claim was held time barred. This appeal followed.

■■ Plaintiff argues that the trial court erred in dismissing her survival claim by ruling that it was barred by the statute of limitations. This court may affirm the trial court's dismissal of count IV if it is justified in the law for any reason appearing in the record.

*Natural Gas Pipeline Co. of America v. Phillips Petroleum Co.* (1987), 163 Ill. App. 3d 136, 142, 516 N.E.2d 527, 531.

■ ■ The statute of limitations applicable to this case is set forth in section 13—212 of the Code of Civil Procedure, which provides:

> "[N]o action for damages for injury or death against any physician *** arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known *** of the existence of the injury or death for which damages are sought in the action, whichever of such date occurs first ***." (Ill. Rev. Stat. 1987, ch. 110, par. 13—212(a).)

Our supreme court has stated that the statute of limitations begins to run when a person knows or reasonably should have known of his injury and knows or reasonably should have known that the injury was wrongfully caused. (*Witherell v. Weimer* (1981), 85 Ill. 2d 146, 156, 421 N.E.2d 869, 874.) Under this "discovery rule," once a party knows or reasonably should have known both that an injury occurred and that it was wrongfully caused, that party has an obligation to inquire further to determine whether an actionable wrong has been committed. (*Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 416, 430 N.E.2d 976, 980-81.) The term "wrongfully caused" does not mean knowledge of negligent conduct or knowledge of the existence of a cause of action. (*Knox College*, 88 Ill. 2d at 416, 430 N.E.2d at 980; *Nolan v. Johns-Manville Asbestos* (1981), 85 Ill. 2d 161, 170-71, 421 N.E.2d 864, 868.) The term refers instead to the point in time when the injured person becomes possessed of sufficient information concerning the injury and its cause so that a reasonable person would be put on notice to determine whether actionable conduct was involved. *Knox College*, 88 Ill. 2d at 416, 430 N.E.2d at 980-81.

■ In many, if not most, cases, the question of when a party knew or reasonably should have known both of the injury and that it was wrongfully caused is one of fact. (*Witherell*, 85 Ill. 2d at 156, 421 N.E.2d at 874; *Tobias v. Winkler* (1987), 156 Ill. App. 3d 886, 893, 509 N.E.2d 1050, 1054.) Only when the facts are undisputed, and it is apparent from those facts that only one conclusion can be drawn, does the question become one of law. (*Witherell*, 85 Ill. 2d at 156, 421 N.E.2d at 874; *Saunders v. Klungboonkrong* (1986), 150 Ill. App. 3d 56, 61, 501 N.E.2d 882, 886.) Of course, the record must contain sufficient facts to support such a determination.

*Flores v. St. Mary of Nazareth Hospital* (1986), 149 Ill. App. 3d 371, 378, 502 N.E.2d 1, 5.

■■ In deciding whether the discovery rule has been triggered, our courts look to the specific type of injury at issue. (*Saunders*, 150 Ill. App. 3d at 60, 501 N.E.2d at 885.) If the injury is traumatic in nature, a plaintiff has an immediate duty to inquire as to whether a physician's acts or omissions may have caused the injury. (*Lebrecht v. Tuli* (1985), 130 Ill. App. 3d 457, 486, 473 N.E.2d 1322, 1342.) By contrast, if the injury is an aggravation of a physical problem which may develop absent negligent causes, a plaintiff is not expected to know immediately of either its existence or its potential wrongful cause. *Saunders*, 150 Ill. App. 3d at 60, 501 N.E.2d at 885.

For example, *Witherell v. Weimer* (1981), 85 Ill. 2d 146, 421 N.E.2d 869, involved claims against a physician and the manufacturer of a birth control pill. Both pled the statute of limitations.

The supreme court upheld the dismissal against the manufacturer and reversed as to the physician. In 1966, defendant Dr. Weimer prescribed a birth control pill manufactured by the other defendant, Ortho-Novum, for plaintiff. Shortly after she began taking the pill, plaintiff suffered severe pain and spasms in her leg. Eventually, the leg became so swollen she could hardly bear weight on it. She consulted with Dr. Weimer the following year. His associate, Dr. Taubert, hospitalized her and told her he thought she had a blood clot in her leg. Dr. Weimer, however, told her she had a muscle condition and would have to learn to live with it. Plaintiff's pain and spasms progressively worsened for five years. Dr. Weimer continued to treat her.

Plaintiff was hospitalized a second time by Dr. Weimer in 1972. She told him that she had heard from other women that birth control pills could cause blood clots. Dr. Weimer told her not to worry, that the pills were safe and they would not harm her. She discontinued use of the pills for one month in 1973 at the urging of her mother but resumed taking them after Dr. Weimer again reassured her. She continued to see Dr. Weimer until 1976. During that three-year period Dr. Weimer continued to tell her she had a muscle condition and that there was nothing wrong with the veins in her legs.

In upholding the dismissal as to Ortho, the supreme court emphasized that the plaintiff's mother and others had told her the pill could cause blood clots, that Dr. Taubert told her in 1967 and 1972 that she was having blood clots in her leg and that she knew there was a conflict between the diagnoses of the doctors. The supreme

court stated that given these facts, it was inconceivable that a reasonable person should not have known of the injury and wrongful cause by the second hospitalization. *Witherell*, 85 Ill. 2d at 156-57, 421 N.E.2d at 866-67.

In reaching this conclusion, the *Witherell* court compared these facts to those in *Berry v. G.D. Searle & Co.* (1974), 56 Ill. 2d 548, 309 N.E.2d 550. The *Berry* court had stated:

"From plaintiff's description of the severity of her condition in the complaint and in her reply brief *it is inconceivable that her injury was not occasioned by a traumatic event* and that she knew of this injury more than two years prior to the filing of her complaint." (Emphasis added.) 56 Ill. 2d at 559, 309 N.E.2d at 556.

In contrast, outside of *Witherell*, cases involving the aggravation of an injury that may arise absent negligent causes have typically involved questions of fact. (*E.g., Janetis v. Christensen* (1990), 200 Ill. App. 3d 581, 558 N.E.2d 304.) In *Janetis*, decedent sought treatment from the first physician in July 1982, after noticing a bloody discharge from his rectum. Defendant diagnosed decedent as having hemorrhoids. Decedent's symptoms persisted. In October 1982, decedent sought a second opinion and was diagnosed as having colon cancer in November 1982. After surgery in November, decedent was assured by the second physician that there were no problems. In May 1983, decedent returned to the second physician for the same symptoms. The second physician attributed the bleeding to hemorrhoids. In the fall of 1983, decedent again consulted with the second physician, who then ran tests and concluded that the cancer had recurred. Decedent had a colostomy in November 1983, but was notified that the cancer could not be entirely removed. Decedent passed away on October 11, 1985. Plaintiff executrix initially filed suit, including a survival action, against defendant on August 14, 1985. The trial court granted the physicians' motion for summary judgment based on the statute of limitations.

This court reversed, stating that the facts did not conclusively establish that decedent knew or should have known of the injury and its wrongful cause before August 1983 because the record showed that the doctors told him that the bleeding was due to hemorrhoids as late as May 1983. The court further stated that even if decedent should have known of the physical problem and the misdiagnosis of his bleeding in November 1982, this awareness did not satisfy the discovery rule as a matter of law. Nor did decedent's awareness of the correct diagnosis in November 1982 suffice, be-

cause the record did not show that decedent was aware of the result of the misdiagnosis at that time, particularly where decedent was told that all the cancer had been removed by the first operation. *Janetis*, 200 Ill. App. 3d at 587, 558 N.E.2d at 308.

■■ ■ In the present appeal, decedent was correctly diagnosed with Hodgkin's disease in May 1985. Under *Janetis*, for a dismissal to be proper, the record must disclose facts indicating that decedent knew or reasonably should have known of the result of the misdiagnosis before the statute of limitations begins to run. Defendant does not point to anything in the record which indicates that the decedent knew that his symptoms as of the date of the first diagnosis were attributable to Hodgkin's disease. Therefore, we cannot say as a matter of law that decedent even knew he was misdiagnosed at the time of the second diagnosis. Nor does defendant point to anything in the record which shows that decedent should reasonably have been aware of the result of the misdiagnosis at any time prior to and including May 1985. Plaintiff's claim is not that the misdiagnosis caused decedent to contract Hodgkin's disease; rather, it is that the misdiagnosis induced decedent to delay treatment. Consequently, under *Janetis*, there were insufficient facts on the record to support the trial court's decision regarding the discovery issue as a matter of law. *Flores*, 149 Ill. App. 3d at 378, 502 N.E.2d at 5.

Defendant argues that *Real v. Kim* (1983), 112 Ill. App. 3d 427, 445 N.E.2d 783, imposes a duty on a patient to investigate a possible misdiagnosis once the patient has been correctly diagnosed. In *Real*, plaintiff brought a wrongful death claim against defendant Dr. Kim, alleging medical malpractice caused the death of decedent William Real. In April 1976, decedent suffered from an unidentified neurological malady and sought treatment at defendant Northwestern Memorial Hospital. On April 13, 1976, the results of an EMI test were evaluated and reported as normal by Dr. Kim, an employee of defendant Northwestern Radiological Group. Nevertheless, in June 1979, decedent was diagnosed as having brain cancer. Plaintiff filed suit on June 19, 1981, alleging that the misdiagnosis induced decedent to delay seeking treatment until the cancer was incurable, resulting in decedent's death on August 9, 1980. The trial court granted defendants' motion to dismiss based on the statute of limitations defense.

This court initially held that it need not address the issue of when decedent's cause of action accrued because the statute of limitations set an outside limit of four years from the date on which the alleged negligent act or omission occurred. (*Real*, 112 Ill. App.

3d at 430, 445 N.E.2d at 786.) Yet the court also held that the defendants were not estopped from asserting the limitations defense because decedent had a duty to investigate whether he had a claim in June 1979, when he was diagnosed as having brain cancer. *Real*, 112 Ill. App. 3d at 435-36, 445 N.E.2d at 789.

There is nothing in the language of *Real* which purports to create the sort of *per se* rule urged by defendant in this case. *Real* cannot stand for the proposition that a patient's duty to investigate arises once he or she has been correctly diagnosed because the fact that a second diagnosis is correct is ascertainable only in retrospect. Given two diagnoses, the lay person may not know if *either* is correct, except to suspect that he or she is misdiagnosed if the first course of treatment fails to restore good health. The second physician can say that the first diagnosis was incorrect, but the lay person may not always have a sufficient basis for believing there has been a misdiagnosis except for the worsening symptoms. (See *Gara v. Semerad* (1989), 183 Ill. App. 3d 622, 630, 539 N.E.2d 298, 303 ("Although plaintiff had been seeing various doctors continuously from January 1982, until October 5, 1982, she switched from one doctor to another because none of them were able to find anything wrong with her, and so she was referred to other doctors in an attempt to discover the true nature of her problem, which continued to get worse").) This court has previously refused to hold as matter of law that subjective belief of misdiagnosis, combined with worsening symptoms, triggers the patient's duty to investigate. (See *Lebrecht*, 130 Ill. App. 3d at 486-87, 473 N.E.2d at 1342-43.) There is nothing in the facts and circumstances of this case that would cause us to depart from the general rule that a case involving the aggravation of a problem which may arise absent negligent causes generally presents a question of fact, rather than a question of law.

For the aforementioned reasons, the judgment of the circuit court of Cook County is reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.

MANNING, P.J., and O'CONNOR, J., concur.