James D. NELSON, Jr., Appellant,

v.

AMERICAN NATIONAL RED CROSS, et al., Appellees.

James D. NELSON, Jr., Cross–Appellee,

v.

AMERICAN NATIONAL RED CROSS, et al., Cross–Appellants.

Nos. 93–7114, 93–7115.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 11, 1994.

Decided June 28, 1994.

As Amended June 28, 1994.

Marc Fiedler, Washington, DC, argued the cause, for James D. Nelson, Jr., appellant in No. 93–7114 and cross-appellee in No. 93–7115. On brief was Patrick M. Regan, Washington, DC.

Fern P. O'Brian argued the cause and filed the briefs for American National Red Cross, et al., appellees in No. 93–7114 and cross-appellants in 93–7115. Nancy F. Preiss argued the cause and filed the briefs for Georgetown University, et al., appellees in No. 93–7114 and cross-appellant in No. 93–7115. Bruce M. Chadwick entered an appearance for American National Red Cross.

Before EDWARDS, SILBERMAN and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge HENDERSON.

Opinion concurring in part and dissenting in part filed by Circuit Judge EDWARDS.

KAREN LeCRAFT HENDERSON, Circuit Judge:

James D. Nelson, Jr. (Nelson Jr.) brought suit in district court against the American National Red Cross (Red Cross) and Georgetown University Hospital (Georgetown) (col-

lectively referred to as "the defendants"), claiming that their negligence caused the death of his father, James D. Nelson, Sr. (Nelson Sr.). Nelson Jr.'s complaint included both a survival action and a wrongful death claim. The district court granted the defendants' motion for summary judgment on Nelson Jr.'s survival action, holding that it was barred by the applicable statute of limitations. The court denied the defendants' motion to dismiss Nelson Jr.'s wrongful death claim, however, deciding that it was timely filed even though the statute of limitations applicable to Nelson Sr.'s negligence action had expired before his death. Nelson Jr. appeals the district court's grant of summary judgment on his survival action, while the defendants appeal the court's denial of their motion to dismiss Nelson Jr.'s wrongful death claim.

## I. BACKGROUND

On February 8, 1985, Georgetown physicians removed Nelson Sr.'s spleen during surgery. After the operation, Nelson Sr. experienced internal bleeding that necessitated emergency exploratory abdominal surgery. During the second surgery, performed later that day, Nelson Sr. received transfusions of blood and blood products supplied by the Red Cross.

In October 1986, Dr. Ronald Sacher, a Georgetown physician, informed Nelson Sr. that a portion of the blood he had received during his second surgery had been drawn from an individual who later tested positive for the Human Immunodeficiency Virus (HIV). HIV is the virus believed to cause Acquired Immunodeficiency Syndrome (AIDS), a fatal illness. Dr. Sacher advised Nelson Sr. that he should be tested to deter- mine whether he too was HIV positive. Nelson Sr. was tested and on October 10, 1986, Dr. Sacher informed him that he had tested positive for HIV. Dr. Sacher explained that "being HIV positive was in all likelihood associated with progression to AIDS but that the period of time to progression was uncertain." Joint Appendix (J.A.) at 131. Dr. Sacher gave Nelson Sr. no reason to believe that he would not eventually develop AIDS. J.A. at 132.

In April 1987, Nelson Sr.'s virus became symptomatic—the lymph nodes in his armpits and neck were enlarged and his T-4 cell count dropped. At that time, Dr. Sacher told Nelson Sr. that the symptoms manifested the progression of his condition from HIV positive to an AIDS-related complex (ARC).[1] J.A. at 169–71. From this point forward, Nelson Sr.'s health steadily deteriorated. In the summer of 1989, Nelson Sr. was informed that he had developed symptoms associated with a pre-AIDS condition. J.A. at 187, 398. By the spring of 1990, he had developed AIDS and on March 15, 1991, he died of an AIDS-related illness. J.A. at 169–71, 187.

Nelson Sr. did not file suit against the defendants before his death. On March 9, 1992, Nelson Jr. brought an action seeking damages from the Red Cross resulting from the contaminated blood it had supplied that caused Nelson Sr. to develop AIDS. Nelson Jr. also sued Georgetown, alleging that the medical malpractice of its agents and employees in performing his father's splenectomy necessitated the blood transfusion Nelson Sr. received. Nelson Jr.'s claims were based on the District of Columbia Survival Act, D.C.Code § 12–101,[2] and the District of Columbia Wrongful Death Act, D.C.Code § 16–2701.[3]

---

1. In his deposition, Dr. Sacher explained ARC as "the development of enlarged lymph glands in an HIV positive person." J.A. at 169. An HIV positive individual often develops ARC before his disease progresses to AIDS. *Id.*

2. The District of Columbia Survival Act provides: "On the death of a person in whose favor or against whom a right of action has accrued for any cause prior to his death, the right of action, for all such cases, survives in favor of or against the legal representative of the deceased." D.C.Code § 12–101.

3. The District of Columbia Wrongful Death Act provides in relevant part:

 When, by an injury done or happening within the limits of the District, the death of a person is caused by the wrongful act, neglect, or default of a person or corporation, and the act, neglect, or default is such as will, if death does not ensue, entitle the person injured ... to maintain an action and recover damages, the person who or corporation that is liable if death does not ensue is liable to an action for damages for the death, notwithstanding the death of the person injured, even though the

The defendants moved to dismiss Nelson Jr.'s survival action on the ground that it was barred by D.C.Code § 12–301(8), which provides a three-year statute of limitations for negligence actions. In opposing the defendants' motion, Nelson Jr. relied on matters outside the pleadings and thus, as he concedes, converted the motion to dismiss to a motion for summary judgment. *See* Nelson's Brief at 6 n. 3; Fed.R.Civ.P. 12(b). The trial judge granted summary judgment to the defendants on the survival action, holding that because Nelson Sr. was aware of his injury, its cause and some evidence of wrongdoing by October 1986, the expiration of the three-year statute of limitations barred Nelson Jr.'s survival action. J.A. at 415–16. The defendants also moved to dismiss Nelson Jr.'s wrongful death action, arguing that the complaint failed to state a cause of action because Nelson Sr. could not have brought a timely action for negligence at the time of his death. The trial judge denied the motion to dismiss, holding that the Wrongful Death Act created an independent cause of action that was timely filed within one year of Nelson Sr.'s death.

The trial judge certified his rulings for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). We granted Nelson Jr.'s petition for permission to appeal the district court's grant of summary judgment to the defendants on his survival action as well as the defendants' petition for permission to cross-appeal the court's denial of their motion to dismiss Nelson Jr.'s wrongful death action.

## II. SURVIVAL ACTION

Nelson Jr. appeals the district court's order granting summary judgment to the defendants on his survival action. Summary judgment is appropriate when "there is no genuine issue of material fact, and, viewing the evidence in the light most favorable to the nonmoving party, the movant is entitled to prevail as a matter of law." *Beckett v. Air Line Pilots Assoc.*, 995 F.2d 280, 284 (D.C.Cir.1993) (citation and internal quotation omitted). We review the district court's grant of summary judgment de novo. *Gold-*

*man v. Bequai*, 19 F.3d 666, 672 (D.C.Cir. 1994).

■ Under District of Columbia law, a survival action must be filed within three years of the date the right to maintain the action accrues. D.C.Code § 12–301(8). Ordinarily, a plaintiff's cause of action accrues at the time he suffers the injury alleged. *Burns v. Bell*, 409 A.2d 614, 615 (D.C.1979). The general rule is modified, however, when "the relationship between the fact of injury and some tortious conduct is obscure at the time of injury." *Knight v. Furlow*, 553 A.2d 1232, 1233 (D.C.1989). In such a case, District of Columbia courts employ the discovery rule to determine when the applicable statute of limitations begins to run. *See Burns v. Bell*, 409 A.2d 614 (D.C.1979). Under the discovery rule, a cause of action accrues when the plaintiff "must know or by the exercise of reasonable diligence should know (1) of the injury, (2) its cause in fact, and (3) some evidence of wrongdoing." *Bussineau v. President & Directors of Georgetown College*, 518 A.2d 423, 425 (D.C.1986).

Applying the discovery rule, the district court concluded that Nelson Sr.'s cause of action against the defendants accrued on October 10, 1986, the day that test results established that he was HIV positive and he was so informed. J.A. at 414–17. The court reasoned that Nelson Sr. had been injured "as surely as if he had been administered a poison or struck a blow," that he knew when and how he had contracted the virus and that "wrongdoing by someone was more than a hypothetical possibility." J.A. at 414–15. Nelson Jr. argues, however, that his father's cause of action did not accrue when his father learned that he was HIV positive but rather when he learned that he was suffering from AIDS.

■ Nelson first argues that his father was not injured until he developed AIDS. We disagree. Courts addressing the issue have uniformly held that a plaintiff is injured when he becomes HIV positive and that the statute of limitations begins to run as soon as the plaintiff discovers his injury through an

death is caused under circumstances that constitute a felony.

D.C.Code § 16–2701.

HIV positive test result. *See, e.g., Doe v. Cutter Biological,* 813 F.Supp. 1547, 1555 (M.D.Fla.1993), *aff'd,* 16 F.3d 1231 (11th Cir. 1994); *DiMarco v. Hudson Valley Blood Servs.,* 147 A.D.2d 156, 542 N.Y.S.2d 521, 524–25 (1989); *Doe v. University Hosp.,* 148 Misc.2d 756, 561 N.Y.S.2d 326, 328 (Sup.Ct. 1990); *In re Complex Blood Bank Litig.,* No. 908–843 (Cal.Super.Ct. Dec. 20, 1989) *reprinted in* J.A. at 84–88.

Although the District of Columbia courts have not addressed the issue, we are confident they would agree with the other jurisdictions. The recent decision of the District of Columbia Court of Appeals in *Colbert v. Georgetown Univ.,* 641 A.2d 469 (D.C.1994), gives us specific support for our confidence. There, the plaintiff was informed in 1982 that her physician's decision to perform a lumpectomy rather than a mastectomy in treating her breast cancer increased the probability that her cancer would metastasize. *Id.* at 470. In September 1986, Colbert learned that the cancer had in fact metastasized. *Id.* at 471. When Colbert brought suit in 1989, the defendant argued that her cause of action was time-barred because it had accrued in 1986 and was governed by a three-year statute of limitations. The trial court agreed. The District of Columbia Court of Appeals, sitting *en banc,* rejected Colbert's argument that her cause of action accrued when her cancer metastasized, concluding that Colbert had been injured when her physician performed the lumpectomy and that she had discovered her injury in 1982 when she was so informed. The *Colbert* analysis matches the district court's application of the discovery rule to Nelson Jr.'s survival action: Nelson Sr. was injured when he received contaminated blood and he discovered his injury when he was told that he was HIV positive.

Nelson Jr. argues, however, that if his father's cause of action accrued at the time of the HIV positive test result, it would have been impossible for his father to know at that time the full extent of his damages. He reasons that the course of his father's disease as well as his father's probable damages could not be ascertained until his father developed AIDS. But District of Columbia precedent forecloses this argument. As the District of Columbia Court of Appeals has explained, "We know of no precedent for the position that a plaintiff whose action has accrued, and who has already suffered grievous injury, may defer suit until further complications develop." *Colbert v. Georgetown Univ.,* 641 A.2d at 474; *see also Baker v. A.H. Robins Co.,* 613 F.Supp. 994, 996–97 (D.D.C.1985) ("The fact that [plaintiff] did not then comprehend the full extent of *all* possible sequelae does not matter, for the law of limitations requires only that she has inquiry notice of the existence of a *cause of action."*) (applying District of Columbia law); *Grigsby v. Sterling Drug, Inc.,* 428 F.Supp. 242, 243–44 (D.D.C.1975) (statute of limitations began to run when plaintiff experienced injury even though she was not aware of full extent of injuries) (applying District of Columbia law), *aff'd,* 543 F.2d 417 (D.C.Cir. 1976), *cert. denied,* 431 U.S. 967, 97 S.Ct. 2925, 53 L.Ed.2d 1063 (1977). Indeed, had Nelson Sr. brought suit within three years of the accrual of his cause of action, he could have made a claim based on the probability that he would develop AIDS. *Curry v. Giant Food Co.,* 522 A.2d 1283, 1291 (D.C.1987) ("[R]ecovery of damages based on future consequences of a tort is available only if such consequences are reasonably certain.").

 Nelson Jr. also contends that his father's cause of action did not accrue when he became aware of his HIV positive condition because at that time Nelson Sr. had no reason to know of any wrongdoing by the defendants. Under the discovery rule, the relevant date is when Nelson Sr. knew or "by the exercise of reasonable diligence" should have known of "some evidence of wrongdoing" by the defendants. *Bussineau v. President & Directors of Georgetown College,* 518 A.2d 423, 425 (D.C.1986). Nelson Jr. contends that Nelson Sr.'s test result did not put him on notice of the defendants' potential liability because Dr. Sacher did not expressly inform Nelson Sr. that the blood he received had been improperly screened. A plaintiff's reliance on the representations and expertise of his physician that he has not received negligent care may toll the statute of limitations. *See Doe v. American Nat'l Red Cross,* 1993 WL 25523 (D.D.C. Jan. 29, 1993) (statute tolled when physician told patient that

contracting HIV through blood transfusion was "a piece of bad luck" because everything possible had been done to protect him); *Bussineau v. President & Directors of Georgetown College*, 518 A.2d 423, 425 (D.C.1986) (statute tolled when dentist repeatedly assured patient her treatment was proper and that she was progressing as she should when in fact defendant's work produced "heavy lingual occlusions"). There is no evidence, however, that Dr. Sacher made representations of this sort. On the contrary, when Nelson Sr. learned he was HIV positive, he expressed anger to Dr. Sacher that the transfused blood he received had not been properly screened.[4] Furthermore, as the district court found, Nelson Sr. discussed consulting counsel at that time. J.A. at 54–55. Accordingly, we agree with the district court that on October 10, 1986, Nelson Sr. should have been aware of the defendants' potential liability.

Finally, we reject Nelson Jr.'s argument that the date his father knew or should have known of the elements of his cause of action is a question of fact inappropriate for resolution on summary judgment. District of Columbia courts routinely decide, on summary judgment, the date on which a cause of action accrues under the discovery rule. *See, e.g., Colbert v. Georgetown Univ.*, 641 A.2d 469 (D.C.1994); *Knight v. Furlow*, 553 A.2d 1232 (D.C.1989); *Estate of Chappelle v. Sanders*, 442 A.2d 157 (D.C.1982). We conclude that summary judgment was appropriately granted here. Nelson Sr. should have known he had suffered a legally cognizable injury when he was told he was HIV positive. Nelson Sr.'s reaction to Dr. Sacher's disclosure manifested that he was aware of the defendants' potential liability. Nelson Jr. has not produced facts to the contrary. Accordingly, we affirm the district court's grant of summary judgment to the defendants on the survival action.

## III. WRONGFUL DEATH ACTION

The defendants appeal the district court's denial of their motion to dismiss Nelson Jr.'s wrongful death action. The court rejected the defendants' argument that the wrongful death action was barred because Nelson Sr. had no legally viable cause of action at the time of his death. Under the district court's interpretation of the Wrongful Death Act, "[t]he cause of action ... is not derivative, but, rather, a new and independent cause of action which is not constrained by any temporal limits on the enforceability by the decedent himself of his own rights respecting the same injury at the time of his death." J.A. at 417–18. We disagree with the district court's interpretation of the Wrongful Death Act.

■ The plain language of the Wrongful Death Act creates a cause of action in favor of the decedent's survivor only when the decedent's death "is caused by a wrongful act ... and the act is such as will, if death does not ensue, *entitle the person injured ... to maintain an action and recover damages.*" D.C.Code § 16–2701 (emphasis added). The District of Columbia Court of Appeals has interpreted this language to mean that "[a] cause of action for wrongful death arises only if the deceased could have brought a cause of action for injuries if death had not ensued." *Greater Southeast Community Hosp. v. Williams*, 482 A.2d 394, 395 (D.C.1984). Although the District of Columbia courts have not ruled on the effect of the expiration of the decedent's statute of limitations on the existence of a wrongful death action, several other courts have held that no wrongful death action lies if the decedent could not have brought suit before his death because of the expiration of the statute of limitations. *See, e.g., Russell v. Ingersoll–Rand Co.*, 841 S.W.2d 343, 350 (Tex.1992) ("[T]he more authoritative view, and probably the more prev-

---

4. In his deposition, Dr. Sacher stated:

> I know that he had discussed with me the fact that blood was not properly screened. He had gotten it. It was quite apparent that it was not properly screened because he got the virus from a donor. In our discussions I don't specifically recall telling him that, but it was quite apparent that it was not properly screened.

J.A. at 135. He also stated:

> [I]t's quite obvious that the implications were that the blood supply was contaminated and that donors who were in the high-risk categories were getting through, and he himself expressed anger to me about the fact that how could he have gotten this?

J.A. at 133.

alent, is that if a decedent's action would be barred by limitations, then so would a wrongful death action."); *accord Drake v. St. Francis Hosp.*, 560 A.2d 1059, 1060 (Del.1989); *Lambert v. Village of Summit*, 104 Ill.App.3d 1034, 60 Ill.Dec. 778, 433 N.E.2d 1016 (1982). Although there is authority to the contrary, *see, e.g., Larcher v. Wanless*, 18 Cal.3d 646, 135 Cal.Rptr. 75, 557 P.2d 507 (1976); *Chapman v. Cardiac Pacemakers, Inc.*, 105 Idaho 785, 673 P.2d 385 (1983), we are persuaded, and believe the District of Columbia courts would be so persuaded, by *Russell* and like decisions.[5]

Nelson Jr. argues that the Wrongful Death Act's one-year statute of limitations, D.C.Code § 16–2702, governs his claim and that because he filed suit within one year of his father's death, the district court correctly denied the defendants' motion to dismiss. We disagree. If Nelson Sr. could have maintained an action against the defendants immediately before his death, the wrongful death action would have accrued at the time of his death and the one-year statute of limitation would have begun to run. Nelson Sr. did not have a viable cause of action at the time of his death, however, and therefore no wrongful death action accrued. Because Nelson Jr.'s wrongful death action did not accrue, the one-year statute of limitation was not triggered.

Our interpretation of the Wrongful Death Act is supported by the District of Columbia Court of Appeals' holding that a decedent's contributory negligence bars his survivor's recovery for wrongful death. *See District of Columbia v. Brown*, 589 A.2d 384 (D.C.1991). The *Brown* decision manifests that a wrongful death action is derivative in nature, that is, a defense that would have applied against a decedent had he brought suit before his

death operates against his survivor in an action for wrongful death. Accordingly, if, as we conclude, Nelson Sr.'s cause of action was time-barred at his death, his son's recovery for his wrongful death is likewise barred.

 Lest our disposition of the wrongful death claim be interpreted to render this statute mere surplusage to the survival statute, we expressly dismiss that interpretation. The survival statute compensates the estate for injuries caused to the decedent while the wrongful death provision gives a right of action to his survivor who suffers a loss because of his death. *See Runyon v. District of Columbia*, 463 F.2d 1319, 1321 (D.C.Cir.1972). Under both statutes, the plaintiff nonetheless needs a viable cause of action at the time of death. Thus, the separate one-year limitations period for a wrongful death claim, that is, the one that begins to run at the time of death, applies if there is a live cause of action at the time of death. If so, the survivor has one year to file an action even though the statute of limitations for the underlying claim (and hence the survival action) may have run before the one-year period expires.

For the preceding reasons, we affirm the district court's grant of summary judgment to the defendants on Nelson Jr.'s survival action and we reverse the court's denial of the defendants' motion to dismiss his wrongful death action.

*So ordered.*

HARRY T. EDWARDS, Circuit Judge, concurring in part and dissenting in part:

I concur in the judgment affirming the grant of summary judgment for appellees on appellant's Survival Act claim. However, I would certify to the District of Columbia

---

**5.** Contrary to the dissent's description of our holding on the wrongful death claim as "reach[ing] out," we see little need to defer to the District of Columbia Court of Appeals because we are construing the plain language of the statute. The local policy has already been established by the legislature, we are as adept at statutory interpretation as the local court and there is no inherent ambiguity or conflict in the D.C.Code provision. *Cf. National Union Fire Ins. Co. of Pittsburgh v. Riggs Nat'l Bank*, 5 F.3d 554, 557 (D.C.Cir.1993). The question is not one

of common law, on which we rightly should defer to that court's authority to set doctrine. Moreover, we question whether the District of Columbia Court of Appeals would want us to certify the question in view of the posture of the case, before us on interlocutory appeal. The decision in *Georgetown Univ. v. Sportec Int'l, Inc.*, 572 A.2d 119 (D.C.1990), where the court refused to consider the certified question and suggested that D.C.Code § 11–273 should be used sparingly, was also an interlocutory appeal.

Court of Appeals the question whether a wrongful death claim is time-barred in cases in which the statute of limitations has run on the underlying tort claim, but which are brought within one year of a decedent's death caused by injuries resulting from the underlying tort. As this court has held, "a federal court should normally decline to speculate on such a question of local doctrine." *Nello L. Teer Co. v. Washington Metropolitan Area Transit Authority,* 921 F.2d 300, 301 (D.C.Cir.1990) (brackets and ellipses omitted) (quoting *Delahanty v. Hinckley,* 845 F.2d 1069, 1070 (D.C.Cir.1988)). The timeliness of appellant's Wrongful Death Act claim presents a question of first impression in the District of Columbia, is purely a question of local law, and is squarely presented in this case. Given that there is a great deal of persuasive authority on both sides of this important and potentially recurring issue,

*see, e.g., Russell v. Ingersoll–Rand Co.,* 841 S.W.2d 343 (Tex.1992) (collecting extensive authorities on both sides of this question), I do not believe that it is appropriate for this court to speculate as to how the District of Columbia Court of Appeals would decide this case. Indeed, I have no idea why the majority feels compelled to reach out and decide this question, especially given that appellee's counsel agreed at oral argument that this case presents a certifiable issue. I would certify the question pursuant to D.C.Code section 11–723.