FRANK WOLF, Ex'r of the Estate of Lieselotte Wolf, Deceased, Plaintiff-Appellant, v. RUDSEN BUESER, Defendant-Appellee (Ravenswood Health Enterprises, Inc., *et al.*, Defendants).

First District (3rd Division)   No. 1—93—4283

Opinion filed March 29, 1996.

GREIMAN, J., specially concurring in part and dissenting in part.

Goldberg & Goldberg (Barth H. Goldberg, of counsel), and David A. Novoselsky & Associates (David A. Novoselsky, of counsel), both of Chicago, for appellant.

Williams & Montgomery, Ltd., of Chicago (Lloyd E. Williams, Jr., and Perry W. Hoag, of counsel), for appellee.

JUSTICE CERDA delivered the opinion of the court:

Plaintiff, Frank Wolf, executor of the estate of Lieselotte Wolf (Mrs. Wolf), appeals from the dismissal of counts VI through VIII and XIV through XVI alleging the failure of Rudsen Bueser, M.D., to diagnose Mrs. Wolf's breast cancer, pursuant to section 2—619(a)(5) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(5) (West 1992)). Plaintiff argues that the trial court erred in dismissing the complaint as being filed after the statute of limitations had run and that plaintiff sufficiently pleaded equitable estoppel and fraudulent concealment.

The issue in this case involves application of the discovery rule for the commencement of the statute of limitations for this medical malpractice action for metastasis of plaintiff's cancer (the spread of the cancer to a different part of her body).

In 1981 Mrs. Wolf had a benign cyst surgically removed from her left breast. In 1985 Mrs. Wolf had a mammogram of her right breast that was interpreted as normal by Drs. Metz and Green. On June 29, 1987, Mrs. Wolf wanted to be rechecked and had mammograms that

were interpreted by Dr. Bueser, a radiologist. Mrs. Wolf never discussed the results with Dr. Bueser but only with Dr. Metz, who stated that there was only a cyst.

Sometime in April 1988 a mammogram was performed on the right breast, and Drs. Green and Rosenzweig diagnosed Mrs. Wolf as having only a cyst. On April 26, 1988, Mrs. Wolf visited Dr. Caldwell for a second opinion. A biopsy and mammogram were performed. Dr. Caldwell diagnosed cancer and told Mrs. Wolf that she may have had the cancer for about six to seven years. He also told her that Dr. Bueser's mammograms were "no good" and that he could not see anything in those mammograms.

Dr. Rosenzweig told Mrs. Wolf a couple of days later that he did not believe she had cancer. He referred her to a surgeon, who advised her that surgery was needed. On May 10, 1988, a mastectomy was performed on Mrs. Wolf's right breast, and lymph nodes were also removed. Chemotherapy began in June 1988. In September 1989 Mrs. Wolf learned that the cancer had metastasized to her abdomen after she noticed fullness in the abdomen. Mrs. Wolf died on August 22, 1990, as a result of the cancer.

On December 15, 1989, plaintiff filed the first medical malpractice complaint, but Dr. Bueser was not named as a defendant until the second amended complaint, which was filed on January 31, 1991.

Count VI of plaintiff's sixth amended complaint alleged that Dr. Bueser was negligent in failing to diagnose Mrs. Wolf's breast cancer and that the cause of action was brought within two years after the date on which plaintiff or Mrs. Wolf knew or through the use of reasonable diligence should have known of the injury and death for which damages were sought. Allegedly Mrs. Wolf, through the exercise of reasonable diligence, first suspected that her condition was wrongfully caused during or after September 1989 when her cancer was diagnosed as having metastasized.

Count VII alleged that plaintiff could not have discovered the cause of action against Dr. Bueser before October 30, 1992, when Dr. Caldwell testified at his deposition that the mammograms contained no numbers, date, or names to establish that they were in fact read by Dr. Bueser and were illegible. Dr. Bueser knew that the mammograms were illegible. Plaintiff alleged that Dr. Bueser omitted to inform Mrs. Wolf or other doctors caring for Mrs. Wolf that the mammograms were nondiagnostic and that he failed to request that Mrs. Wolf repeat the mammograms. Dr. Bueser knowingly made representations with the intent that his agents or those in privity with him would communicate them to Mrs. Wolf and with the intent that Mrs. Wolf rely on the representations, which were communicated to Mrs. Wolf.

Plaintiff also alleged that the representations and omissions were intentionally or recklessly calculated by Dr. Bueser to deceive Mrs. Wolf and to prevent her from discovering her cause of action against Dr. Bueser and to conceal his own negligent conduct and wrongdoing. Mrs. Wolf alleged that in fact she relied on the representations by not pursuing further treatment and by not bringing the action earlier due to the fiduciary relationship she had with her doctors.

Count VIII alleged that Dr. Bueser was equitably estopped from asserting any statute of limitations because plaintiff could not have discovered the fraudulent nature of Dr. Bueser's representations or conduct until Dr. Caldwell's deposition. ·

Counts XIV, XV, and XVI were brought pursuant to the Wrongful Death Act (740 ILCS 180/1 *et seq.* (West 1992)). Count XIV alleged negligence, count XV alleged fraudulent concealment, and count XVI alleged equitable estoppel.

Dr. Bueser filed a motion to dismiss the sixth amended complaint pursuant to section 2—619(a)(5) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(5) (West 1992)) for the failure to file suit within two years of discovering the injuries and for the failure to state claims of fraudulent concealment and equitable estoppel.

The trial court granted the motion to dismiss with prejudice. The trial court found that there was no just reason to delay enforcement of or appeal from the order, and plaintiff appealed.

Plaintiff first argues on appeal that the trial court erred in granting the motion to dismiss because the basis of the action was the misdiagnosis resulting in metastasis and that it was a question of fact when Mrs. Wolf discovered the injury of metastasis.

■ Section 2—619(a)(5) of the Code of Civil Procedure authorizes a defendant to file a motion for dismissal on the ground that the action was not commenced within the time limited by law. 735 ILCS 5/2—619(a)(5) (West 1992). If the grounds do not appear on the face of the pleading attacked, the motion shall be supported by affidavit. 735 ILCS 5/2—619(a)(5) (West 1992). Parties may file not only affidavits but deposition transcripts. *In re Estate of Silverman*, 257 Ill. App. 3d 162, 172, 628 N.E.2d 763 (1993).

■ For purposes of the motion to dismiss, all well-pleaded facts in the pleading as well as reasonable inferences to be drawn from those facts are taken as true. *Waterford Executive Group, Ltd. v. Clark/Bardes, Inc.*, 261 Ill. App. 3d 338, 343, 633 N.E.2d 1003 (1994). The movant's asserted affirmative matter will not defeat a cause of action if it is merely evidence that the movant expects to submit in contesting an ultimate fact contained in the pleading. *Curtis Casket Co. v. D.A. Brown & Co.*, 259 Ill. App. 3d 800, 805, 632 N.E.2d 204 (1994).

■ A trial court should grant a motion for involuntary dismissal if, after construing the documents supporting the motion in the light most favorable to the party opposing the motion, the trial court finds no disputed fact issues (*Meyers v. Rockford Systems, Inc.*, 254 Ill. App. 3d 56, 61, 625 N.E.2d 916 (1993)) and finds that no set of facts can be proved that would entitle plaintiff to recover (*Nikolic v. Seidenberg*, 242 Ill. App. 3d 96, 98-99, 610 N.E.2d 177 (1993)).

Only when facts are undisputed, and it is apparent from those facts that only one conclusion can be drawn, does it become a question of law when a party knew or reasonably should have known of the injury and that it was wrongfully caused. *Bradtke v. Reotutar*, 214 Ill. App. 3d 611, 614, 574 N.E.2d 110 (1991).

On appeal the reviewing court must consider whether there were genuine issues of material fact that precluded dismissal, or absent such facts, whether dismissal was proper as a matter of law. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17, 619 N.E.2d 732 (1993). The review is *de novo. Kedzie*, 156 Ill. 2d at 116.

■ Section 13—212 of the Code of Civil Procedure is the medical malpractice statute of limitations:

> "[N]o action for damages for injury or death against any physician *** whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known *** of the existence of the injury or death for which damages are sought." 735 ILCS 5/13—212 (West 1992).

The statute of limitations for wrongful death actions is two years after the death. 740 ILCS 180/2 (West 1992).

■ We preliminarily note that a wrongful death action requires that the deceased had a viable action for wrongful injury at the time of death so that the decedent must have discovered his claim within two years of the date he filed his action in order for a plaintiff to maintain a wrongful death action. *Janetis v. Christensen*, 200 Ill. App. 3d 581, 586, 558 N.E.2d 304 (1990). In this case, Mrs. Wolf died on August 22, 1990, which means that had Mrs. Wolf not died on that date, she must have had a viable medical malpractice cause of action that she could have filed on August 22, 1990. If because of the expiration of the statutes of limitation and repose she could not have maintained a medical malpractice action on August 22, 1990, then the next of kin cannot maintain a wrongful death action. *Wyness v. Armstrong World Industries, Inc.*, 131 Ill. 2d 403, 411, 546 N.E.2d 568, 571 (1989).

■ There have been some cases involving the misdiagnosis of can-

cer that have considered the issue whether a plaintiff discovered the cause of action at the point when the cancer either metastasized or recurred. We interpret these cases as holding that, where there was no actionable injury as a result of the misdiagnosis of cancer other than the metastasis or recurrence of the cancer, the cause of action accrued on the discovery of the metastasis or recurrence. A summary of these cases follows.

In *Kaplan v. Berger*, 184 Ill. App. 3d 224, 539 N.E.2d 1267 (1989), the patient alleged that defendant's doctor and clinic failed to diagnose cancer in her left leg that metastasized to her groin. The doctor first examined her in February 1982, and the clinic saw her in October 1981 and February 1983. The complaint was filed in March 1985, and summary judgment was entered in favor of defendants based on the two-year statute of limitations.

The patient first felt pain in her right leg in 1981 and was examined by various doctors, who did not diagnose cancer. After an April 1983 operation to remove a lump in the leg, a biopsy revealed cancer. In August 1983 enlarged lymph nodes in her groin were determined to be cancer that had metastasized from the right leg. The court found a disputed material fact as to when plaintiff knew or should have known of the metastasis. *Kaplan*, 184 Ill. App. 3d at 232. A trier of fact could determine that the cause of action accrued when plaintiff learned of the metastasis of the cancer. *Kaplan*, 184 Ill. App. 3d at 233. The court held that the trial court erred in finding that the statute of limitations barred plaintiff's complaint. *Kaplan*, 184 Ill. App. 3d at 233.

In *Janetis v. Christensen*, 200 Ill. App. 3d 581, 558 N.E.2d 304 (1990), the patient alleged a doctor's negligence in failing to diagnose colon cancer and a doctor's negligence in failing to properly read X rays of his colon in April 1982 when he was diagnosed with hemorrhoids. In November 1982 the patient was diagnosed with colon cancer and had surgery that was supposedly successful. An examination in 1983 revealed the recurrence of the cancer. It could not be found as a matter of law that the patient should have been aware of his injury and the possibility that the misdiagnosis was the cause before 1983 when the patient found out that the cancer had progressed. *Janetis*, 200 Ill. App. 3d at 587.

In *Johnson v. Mullee*, 385 So. 2d 1038 (Fla. App. 1980), the patient's action for medical malpractice filed in 1976 was based on the failure to diagnose breast cancer. In 1972 the doctor found lumps in a breast but did not investigate them further. In 1973 another doctor performed a biopsy and a mastectomy, and cancer of the breast with metastasis to lymph nodes was revealed. In 1975 it was

discovered that the cancer had metastasized further. At the time the mastectomy was performed, the patient had no cause of action because there was no evidence that the negligence had harmed her because a mastectomy would still have been required. *Johnson*, 385 So. 2d at 1040. It was only when the cancer metastasized beyond the surgically removed portions that the patient discovered her cause of action and that she could have known of the harm of the negligent diagnosis. *Johnson*, 385 So. 2d at 1040. Summary judgment in favor of the doctor based on a two-year statute of limitations was reversed.

In *Catz v. Rubenstein*, 201 Conn. 39, 513 A.2d 98 (1986), summary judgment in favor of a doctor was entered based on a two-year statute of limitations. The patient discovered a lump in her breast, and the doctor ordered a mammogram. In 1979 the doctor informed the patient that the mammogram was negative for cancer. In 1980 another lump was discovered, and the doctor said there was no cause for concern. The patient contacted the doctor later in 1980 when the lump grew larger, and a mammogram indicated a malignancy. The malignancy was confirmed the next month when the patient had a mastectomy. The cancer metastasized, and the medical malpractice action was filed in 1982.

Plaintiff argued that the patient was led to believe that the cancer was a new growth not related to the condition for which she had been examined in 1979. The court held that the patient would not have an injury and did not sustain actionable harm until she discovered or in the exercise of reasonable care should have discovered a causal relationship between the 1979 diagnosis and subsequent lack of treatment and the metastasis of cancer discovered in 1980. *Catz*, 201 Conn. at 44, 513 A.2d at 101. The court found a genuine issue of material fact and reversed summary judgment. *Catz*, 201 Conn. at 44, 513 A.2d at 101.

In *Whitaker v. Zirkle*, 188 Ga. App. 706, 374 S.E.2d 106 (1988), a doctor's motion for summary judgment based on a five-year statute of limitations was denied. The doctor diagnosed a mole on the patient to be nonmalignant in 1978. A biopsy in 1985 revealed metastatic cancer at the same site. A reexamination of the tissue sample taken in 1978 revealed the presence of malignant cancer cells. In the 1986 action the alleged injury was the subsequent metastasis of the cancerous cells that remained at the site where the mole was removed. *Whitaker*, 188 Ga. App. at 707, 374 S.E.2d at 108. There was an issue of fact whether the cancer present in 1978 was unmetastasized so that the subsequent metastasis occurred at some later date and so was first discovered in 1985. *Whitaker*, 188 Ga. App. at 708, 374 S.E.2d at 108.

In *Holmes v. Lado*, 412 Pa. Super. 218, 602 A.2d 1389 (1992), summary judgment was entered in favor of defendant doctor based on the two-year statute of limitations. The patient consulted a doctor in 1982 about lumps in her breast, and fibrocystic disease was diagnosed. In April 1985 another mammogram was performed, and no masses were found. In August 1985 the doctor found a mass in a breast, and the patient was diagnosed as having breast cancer. Metastasis to the brain was revealed in 1986. The medical malpractice action was filed in 1988. The court held that the patient had sufficient knowledge to commence the statute of limitations in August 1985. *Holmes*, 412 Pa. Super. at 225, 602 A.2d at 1392. Plaintiff argued that the injury alleged was the metastasis and not the breast cancer, but the court disagreed on the basis that the complaint did not allege negligence pertaining to the metastasis. *Holmes*, 412 Pa. Super. at 427 n.3, 602 A.2d at 1393 n.3.

Other cases, most of which involved patients who suffered actionable injury prior to or other than metastasis, have considered in their analysis of when the cause of action accrued whether the patient could have filed suit for damages for the probability of metastasis or recurrence in the future.

In *Karol v. Berkow*, 254 N.J. Super. 359, 603 A.2d 547 (1992), the medical malpractice action was dismissed based on a two-year statute of limitations. The doctor advised the patient in 1983 that there was no cause for concern over a mole. In 1984 a biopsy revealed malignant melanoma. The patient sued his doctor in 1986. The patient obtained an opinion from a medical expert during the pretrial proceedings that the one-year delay in diagnosis increased the possibility of his dying from melanoma during the next $7^1/_2$ years to 23%. In light of that opinion and the absence of the disease at the time, the patient voluntarily dismissed his complaint. In 1989 a nodule appeared adjacent to the surgical scar. Surgery was performed in 1989, and the growth was diagnosed as metastatic malignant melanoma. The patient filed a new complaint in 1991.

The court held that the patient's "increased-risk-of-future-harm" cause of action did not accrue until the metastasis occurred in 1989 and that until then the statute of limitations could not begin to run. *Karol*, 254 N.J. Super. at 362, 367, 603 A.2d at 548, 551. The increased risk of 23% would not have supported a finding that the recurrence of cancer was reasonably probable at the time that the first complaint was filed. *Karol*, 254 N.J. Super. at 367, 603 A.2d at 551. In 1984 the patient had viable causes of action for the 1983-84 growth of the melanoma and for mental distress, but the 1989 claim was not time-barred because of the existence of a cognizable injury in 1984.

*Karol*, 254 N.J. Super. at 368, 603 A.2d at 551. The order dismissing the complaint was reversed. *Karol*, 254 N.J. Super. at 369, 603 A.2d at 551.

In *Fabio v. Bellomo*, 504 N.W.2d 758 (Minn. 1993), summary judgment was entered in favor of defendant doctor based on a two-year statute of limitations. The doctor noticed a lump in the patient's breast on at least two occasions during examinations between 1982 and 1984 and in 1986, but defendant told her not to worry. In 1987 the patient went to another doctor, who noticed a lump and ordered a mammogram. A biopsy determined that the mass detected by the mammogram was cancerous and that the cancer had metastasized to lymph nodes. Suit was filed in 1988.

The court refused to recognize a theory of recovery for an increased chance of a recurrence of cancer. *Fabio*, 504 N.W.2d at 762. The court noted that even if it did adopt the theory of recovery in medical malpractice actions, the theory would not apply there because the patient failed to present evidence that it was more probable than not that her cancer would recur. *Fabio*, 504 N.W.2d at 763. An expert witness would have testified that the risk of cancer recurrence was about 30%.

A case involving the injury of developing the disease acquired immunodeficiency syndrome (AIDS) relied in part on *Colbert v. Georgetown University*, 641 A.2d 469 (D.C. 1994), which found that a breast-cancer patient could have brought an earlier claim for the probability of metastasis, to find that a cause of action accrued when the patient who received blood contaminated with human immunodeficiency virus (HIV) became HIV positive and not when he later developed AIDS. *Nelson v. American National Red Cross*, 26 F.3d 193, 197 (D.C. Cir. 1994). The court found that such a plaintiff is injured when he becomes HIV positive and that the statute of limitations begins to run as soon as plaintiff discovers his injury through a positive test result. *Nelson*, 26 F.3d at 196-97. The patient could have made a claim at that time based on the probability that he would develop AIDS. *Nelson*, 26 F.3d at 197.

We also note *Campo v. Tama*, 133 N.J. 123, 627 A.2d 135 (1993), which did not involve the issue of accrual of a cause of action but recognized the availability of damages for future recurrence of cancer. The court held that the plaintiff whose cancer was misdiagnosed was entitled to a jury determination of the probability of a recurrence and future medical costs where there was trial testimony that because of the delay in diagnosis plaintiff had a 50% to 75% chance of a recurrence of cancer. *Campo*, 133 N.J. at 130, 627 A.2d at 139.

■ A cause of action accrues only when all the elements of the

cause of action are present: duty, breach, and resulting injury or damage. *West American Insurance Co. v. Sal E. Lobianco & Son Co.*, 69 Ill. 2d 126, 129-30, 370 N.E.2d 804 (1977). Without accrual there can be no cause of action, and there is no cause of action until injury or damage has occurred. *West*, 69 Ill. 2d at 131.

■ The general rule of damages in a tort action is that the wrongdoer is liable for all injuries resulting directly from wrongful acts. *Siemieniec v. Lutheran General Hospital*, 117 Ill. 2d 230, 259, 512 N.E.2d 691 (1987); see also *Cuerton v. American Hospital Supply Corp.*, 136 Ill. App. 3d 231, 240, 482 N.E.2d 187 (1985) (subsequent injury relating back to initial act of negligence was not consequential damage from prior injury, and separate statute of limitations period would run from date of discovery of subsequent injury). Future damages are compensable if they are reasonably certain to occur. *Harp v. Illinois Central Gulf R.R. Co.*, 55 Ill. App. 3d 822, 827, 370 N.E.2d 826 (1977). Speculative damages are not recoverable. *Siemieniec*, 117 Ill. 2d at 259.

■ We hold that the trial court erred in dismissing the negligence counts against Dr. Bueser. Plaintiff can possibly prove that the action for damages for the metastasis of the undiagnosed breast cancer did not accrue until the metastasis occurred or until an earlier date that was within two years prior to the filing of the complaint against Dr. Bueser. If in April 1988 when Mrs. Wolf's breast cancer was diagnosed it was not reasonably certain that the cancer would metastasize, then the metastasis was not yet an injury that was actionable, and the statute of limitations would not start to run on a cause of action for damages for metastasis. Plaintiff could seek only damages for an injury that had occurred or would more probably than not occur in the future as a result of the misdiagnosis.

Plaintiff argues that Mrs. Wolf could have reasonably believed that the cancer had been removed as a result of the surgery and chemotherapy in 1988. It is a question of fact whether it was reasonably certain that Mrs. Wolf's cancer would metastasize at the time she had surgery and chemotherapy in 1988 and it was a question of fact whether plaintiff knew or should have known at the time that there would be a metastasis of her cancer.

If the cause of action for metastasis did not occur until after the statute of limitations had run for the cause of action for prior injuries, then plaintiff's failure to timely file a complaint for the prior injuries would not by itself bar the claim for damages for the metastasis. Plaintiff would not be improperly splitting his cause of action if damages for metastasis could not have been brought at the time that a complaint could have been filed to recover for prior injuries.

■ Plaintiff next argues that he sufficiently pleaded equitable estoppel and fraudulent concealment.

Section 13—215 of the Code of Civil Procedure provides:

"If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards." 735 ILCS 5/13—215 (West 1992).

The concealment contemplated by section 13—215 consists of affirmative acts or representations that are calculated to lull or induce a claimant into delaying the filing of his claim or to prevent him from discovering his claim. *Smith v. Cook County Hospital*, 164 Ill. App. 3d 857, 862, 518 N.E.2d 336 (1987). Mere silence on the part of the defendant and failure by the claimant to learn of the cause of action are not enough. *Smith*, 164 Ill. App. 3d at 862.

■ Equitable estoppel is a theory that precludes a litigant from denying prior assertions in cases where it would be unjust to permit him to disavow express and implied statements upon which another party has relied and which have caused him to forego filing his suit. *Smith*, 164 Ill. App. 3d at 865. A defendant cannot benefit from his own misconduct. *Smith*, 164 Ill. App. 3d at 865. As with fraudulent concealment, plaintiff must show that defendant said or did something to lull or induce plaintiff to delay the filing of his claim until after the limitations period had run. *Smith*, 164 Ill. App. 3d at 865.

■ Plaintiff alleged that statements made by Dr. Bueser, who knew the mammograms were nondiagnostic, caused her to delay filing the action. Dr. Caldwell told her that the mammogram was "no good." Therefore, in April 1988, Mrs. Wolf was on notice of the possibility that the 1987 mammograms were illegible (and therefore could not support a diagnosis of the absence of cancer). In this case, Dr. Bueser's interpretations of Mrs. Wolf's mammograms do not rise to the level of affirmative acts that were intended to lull or induce a claimant into delaying the discovery of her claim. Dr. Bueser never talked with Mrs. Wolf or had contact with her. The plaintiff has not alleged or shown any facts that Dr. Bueser intended to conceal any cause of action. Negligence, if any, by Dr. Bueser is not the equivalent to fraudulent concealment and is not sufficient by itself to invoke equitable estoppel. The dismissal of the fraudulent concealment and equitable estoppel counts is affirmed.

The judgment of the trial court is affirmed in part, reversed in part, and the cause is remanded.

Affirmed in part; reversed in part and remanded.

RIZZI, P.J., concurs.

JUSTICE GREIMAN, specially concurring in part and dissenting in part:

I would concur with the majority in affirming as to issues touching upon fraudulent concealment and estoppel. However, as to the other issue of when the plaintiff or Mrs. Wolf knew or should have known of Dr. Bueser's malpractice, I dissent.

Simply stated the issue raised is when the statute of limitations begins to run where Mrs. Wolf (1) has been misdiagnosed for cancer in its earlier stages, (2) discovers the misdiagnoses, (3) fails to bring an action against the negligent doctor, (4) then discovers, before the running of the initial limitations period, that there is a cancerous metastasis linked to the earlier cancer and (5) brings an action against all of the other medical providers before the end of that limitations period but fails to join the negligent doctor until after the expiration of the statute of limitations.

The majority suggests that this is a factual question for the trier of fact and that the court cannot deal with this on a section 2—619 motion. The burden of such proof must rest upon the plaintiff, and I am somewhat at a loss how that burden will be carried in light of Mrs. Wolf's testimony. Mrs. Wolf's deposition reveals that she was aware of the poor quality of the mammogram produced by Dr. Bueser before her mastectomy. Her deposition does not reveal any notion that she believed all was well after the first operation or that she was unaware of the doctors' negligence.

To the contrary, suit was filed against the other health care providers before the running of the original statute of limitations. The record indicates that she knew of her condition after her meeting with Dr. Caldwell; however, if her awareness was not acute at that time, she certainly knew at the time of her mastectomy in May of 1988. She acknowledges that she was aware that Dr. Bueser's work was "no good" and illegible.

At the very least, these facts afforded Mrs. Wolf sufficient information concerning the injury to place the burden upon her to inquire further as to the existence of a cause of action against Dr. Bueser. See *Nolan v. Johns-Manville Asbestos*, 85 Ill. 2d 161, 421 N.E.2d 864 (1981).

Accordingly, I believe, the record shows Mrs. Wolf knew of the existence of the injury, *i.e.*, cancer, and the possibility of wrongful conduct, *i.e.*, failure to diagnose, in 1988. Therefore, plaintiff's cause of action against Dr. Bueser, filed on January 31, 1991, is barred by the statute of limitations.

The majority seeks to avoid this inescapable conclusion by treating as two separate and distinct injuries Mrs. Wolf's breast cancer of 1988 and the 1989 metastasis of that cancer. This distinction fails to recognize that the origin of the metastasis was the cancer Dr. Bueser failed to diagnose in 1987. The distinction drawn by the majority also ignores the language of the complaint against Dr. Bueser, which pleads Dr. Bueser's negligence in failing to "diagnose and treat the Plaintiff's Decedent's *breast cancer*" in 1987. (Emphasis added.)

The Illinois cases cited by the majority as support for its decision are readily distinguishable from the instant case. In *Kaplan v. Berger*, 184 Ill. App. 3d 224, 539 N.E.2d 1267 (1989), where plaintiff was faced with what I call the "second opinion quandary," no less than seven physicians failed to correctly diagnose plaintiff's condition as cancer until a growth was removed and microscopically examined. The court declined to place a burden on a "lay patient" to diagnose or ascertain the nature of a medical condition when her physicians did not diagnose that condition. *Kaplan*, 184 Ill. App. 3d at 233. Here, Dr. Caldwell diagnosed and treated Mrs. Wolf's cancer. Thus, the burden of diagnosis was not shifted to Mrs. Wolf, only the burden of further investigation.

Similarly, in *Janetis v. Christensen*, 200 Ill. App. 3d 581, 587, 558 N.E.2d 304 (1990), the court found a question of fact existed as to when decedent became aware of his cause of action because plaintiff's deposition did not demonstrate that the decedent "knew or should have known of defendants' misdiagnosis." In *Janetis*, the defendant had first diagnosed decedent's rectal bleeding as hemorrhoids. Subsequently, decedent was found to have cancer and an operation was performed upon his colon. The subsequent physician did not advise decedent that the bleeding was a result of the cancer and, in fact, "repeatedly assured [decedent], a lay person who plaintiff testified trusted doctors, that the bleeding was due to his hemorrhoids." 200 Ill. App. 3d at 587. Unlike the case at bar, the second doctor did not advise plaintiff of the first doctor's malpractice.

Plaintiff cites *Bradtke v. Reotutar*, 214 Ill. App. 3d 611, 574 N.E.2d 110 (1991), for the proposition that there is no *per se* rule imposing an "absolute duty" on a patient to investigate once he has been correctly diagnosed by a second physician "because the fact that a second diagnosis is correct is ascertainable only in retrospect." *Bradtke*, 214

Ill. App. 3d at 618. A patient has no absolute duty to investigate following conflicting diagnoses, but given the facts of this case, the patient had ample information concerning the cancer and causation "to put a reasonable person on inquiry to determine whether actionable conduct [was] involved." *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 416, 430 N.E.2d 976 (1981).

In the case at bar, Mrs. Wolf's awareness and knowledge were so clear that she did, in fact, file a suit against all of the other medical practitioners for the 1987 malpractice.

By this dissent, by no means do I reject the conclusions of the court in *Kaplan, Janetis* or the several cases from other jurisdictions cited by the majority. I dissent merely because the facts of this case do not fit the holdings in those decisions.