LELA JANETIS, Indiv. and as Independent Ex'r of the Estate of Nicholas S. Janetis, Deceased, Plaintiff-Appellant, v. E.M. CHRISTENSEN *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—88—1882

Opinion filed June 25, 1990.

Edward J. Walsh, Jr., of Wheaton, and David A. Novoselsky & Associates, of Chicago (David A. Novoselsky and Kathleen M. Krist, of counsel), for appellant.

French, Rogers, Kezelis & Kominiarek, P.C., of Chicago (Michael C. Kominiarek, Russell P. Veldenz, and Michael R. Webber, of counsel), for appellee LeRoy B. Garbe.

Johnson & Bell, Ltd., of Chicago (Thomas H. Fegan, of counsel), for appellee E.M. Christensen.

No brief filed for other appellees.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

Lela Janetis (plaintiff), individually and as independent executor of the estate of her husband, Nicholas S. Janetis, brought an action against Doctors E.M. Christensen, LeRoy B. Garbe and W.A. Moore in the circuit court of Cook County, alleging medical malpractice and seeking recovery under the Illinois Wrongful Death Act (Ill. Rev. Stat. 1985, ch. 70, par. 1 et seq.), the Illinois Survivor Act (Ill. Rev. Stat. 1985, ch. 110½, par. 27—6) and the Illinois family expense act (Ill. Rev. Stat. 1985, ch. 40, par. 1015). The circuit court granted defendants Christensen's and Garbe's motions for summary judgment on the ground that the applicable statute of limitations period had expired, and plaintiff appeals from that order.

On August 14, 1985, Nicholas filed a complaint against defendants in the circuit court, alleging defendant Christensen's negligence in failing to diagnose his colon cancer and defendant Garbe's negligence in failing to properly read and interpret X rays of his colon in April 1982. Nicholas died of colon cancer on October 11, 1985.

On December 4, 1986, plaintiff filed an amended complaint, alleging the same acts of negligence. Defendants Christensen and Garbe filed motions for summary judgment, asserting the expiration of the statute of limitations. The limitations statute applicable to medical malpractice claims against physicians bars claims brought more than two years after the date of the claimant's discovery of his claim and absolutely bars claims filed more than four years from the date of the act alleged to have been the cause of the injury. (Ill. Rev. Stat. 1987, ch. 110, par. 13—212.) In granting defendants' summary judgment, the circuit court determined as a matter of law, based upon plaintiff's deposition testimony, that the actions were not brought before the run-

ning of the above limitations period. Plaintiff's deposition testimony revealed the following.

On April 7, 1982, Nicholas went to La Grange Hospital in La Grange Park, Illinois, after he noticed a bloody discharge from his rectum. He was treated by Dr. Christensen, a rectal specialist. On Nicholas' admittance to the hospital, Nicholas and plaintiff understood that Nicholas was to undergo certain tests to determine the cause of the bleeding. Following his discharge from the hospital, Nicholas was informed that the bleeding was due to hemorrhoids, for which no treatment was recommended.

Because of continual bleeding and at the insistence of plaintiff, Nicholas returned to Dr. Christensen on July 29, 1982. Nicholas apprised plaintiff after the visit that Dr. Christensen again diagnosed the problem to be hemorrhoids and stated "there is nothing to worry about." Plaintiff believed her husband was content with the diagnosis and did not question the diagnosis.

In October 1982, when the bleeding continued, plaintiff and Nicholas "were beginning to worry about it then" and discussed the problem with Nicholas' cousin, Leo Pappas. Pappas told Nicholas "this is going on too long." He suggested that Nicholas schedule an appointment with his doctor, Dr. Moore, and then "pushed him into it."

Dr. Moore examined Nicholas in October 1982. At Dr. Moore's request, Nicholas underwent a proctoscopy and biopsy. In November 1982, Nicholas was informed that the results indicated that Nicholas had cancer, but that surgery would take care of the problem. Nicholas was admitted to La Grange Hospital the next day, where Dr. Parenti surgically removed part of his colon. Following the surgery, Dr. Parenti informed plaintiff and Nicholas that "everything was all right" and that he was very pleased with the surgery's outcome. The bleeding ceased following the surgery, and plaintiff believed "it was very positive at that time that it was removed." In three subsequent visits with Dr. Parenti, "everything was going well, there [were] no problems."

In May 1983, Nicholas returned to Dr. Moore because he again experienced rectal bleeding. Dr. Moore informed Nicholas that the bleeding was caused by his hemorrhoids and that there was no problem. He instructed Nicholas to return after Dr. Moore's vacation.

Plaintiff was aware that the previous bleeding was caused by the cancer, but "figure[d] it was taken care of." She was anxious and unsatisfied with the answers the doctors gave them, but stated that Nicholas "was very trusting of his doctors" and did not question them.

Nicholas returned to Dr. Moore in the fall of 1983 after Dr. Moore returned from his vacation. A proctoscopy examination revealed that

the cancer had recurred. Plaintiff and Nicholas again consulted with Dr. Parenti, who informed them that a colostomy was required, whereby the tumor would be removed, the rectum sealed, and the colon brought up. Plaintiff and Nicholas understood at this time that the cancer, a continued growth from his earlier cancer, was the cause of the recurrent bleeding and that its progression required a "different kind of operation."

Subsequent to Nicholas' surgery in November 1983, Dr. Parenti informed plaintiff that there had been more growth of the cancer than he had anticipated and that he could not remove all the cancer. Plaintiff at this time expressed to Dr. Parenti her belief, which she first held during Nicholas' November 1982 hospitalization but did not express to Nicholas, that the diagnosis should have been made earlier. Following radiation therapy and various other problems, Nicholas died on October 11, 1985.

■ On appeal, defendants initially raise an issue as to whether plaintiff has admitted the running of the limitations period by failing to deny defendants' affirmative defenses that the action had been barred by the statute of limitations. We agree with plaintiff that her failure to reply to the affirmative defense attached to defendants' answers is not an admission because defendants' affirmative defense did not contain any well-pleaded facts but mere legal conclusions. (See *Mitchell Buick & Oldsmobile Sales, Inc. v. National Dealer Services, Inc.* (1985), 138 Ill. App. 3d 574, 485 N.E.2d 1281.) In any event, defendants have waived this issue by failing to raise it at the summary judgment hearing when plaintiff introduced contradictory evidence. See *In re Adoption of McFayden* (1982), 108 Ill. App. 3d 329, 438 N.E.2d 1362.

We turn now to plaintiff's contention that the circuit court improperly found as a matter of law that her survival and wrongful death actions were not brought within the limitations period for medical malpractice actions against physicians. Before focusing on plaintiff's deposition testimony as the basis for the circuit court's ruling, it is necessary to distinguish between the two actions for purposes of determining the date the limitations period begins to run for each action, as well as the date the period is tolled.

■ Plaintiff's survival action is a derivative action for the decedent's injury. (Ill. Rev. Stat. 1985, ch. 110½, par. 27—6.) As such, the survival count in plaintiff's amended complaint relates back to the date the decedent filed his claim for purposes of tolling the limitations period, while the date which triggers the limitations period is the date the decedent discovered his action. (*Wyness v. Armstrong World Industries, Inc.* (1989), 131 Ill. 2d 403, 411, 546 N.E.2d 568, 571.) Since

Nicholas filed his actions on August 14, 1985, plaintiff's survival action is time barred unless Nicholas discovered the action within two years of that date.

■■ ■ Plaintiff's wrongful death action, on the other hand, is based upon her loss as the next of kin. (*Wyness*, 131 Ill. 2d at 411, 546 N.E.2d at 571.) Hence, the date plaintiff filed her amended complaint is the date which tolls the limitations period for this action, while the date which triggers the limitations period is the date *plaintiff* discovered her action. (*Wyness*, 131 Ill. 2d at 414-15, 546 N.E.2d at 573-74.) Plaintiff's amended complaint filed on December 4, 1986, was brought within two years of her discovery of the action because she could not have discovered the action until Nicholas' death on October 14, 1985, since death creates the next of kin's wrongful death action. (See *Wyness*, 131 Ill. 2d at 414-15, 546 N.E.2d at 573-74; *Cramsey v. Knoblock* (1989), 191 Ill. App. 3d 756, 762, 547 N.E.2d 1358, 1363.) Nonetheless, because a wrongful death action requires that the deceased have a viable action for wrongful injury at the time of death (*Wyness*, 131 Ill. 2d at 414, 546 N.E.2d at 574), Nicholas must have discovered his claim within two years of the date he filed his action, August 14, 1985, in order for plaintiff to maintain her wrongful death action.

■■ The circuit court found that plaintiff's deposition testimony established that Nicholas discovered his medical malpractice claim in November 1982, more than two years from the date he filed his action. The discovery date under the limitations statute is determined from the time the claimant knows or reasonably should know of the injury and also knows or reasonably should know that it was wrongfully caused. (*Nolan v. Johns-Mansville Asbestos* (1981), 85 Ill. 2d 161, 169, 421 N.E.2d 864, 868; *Witherell v. Weimer* (1981), 85 Ill. 2d 146, 156, 421 N.E.2d 869, 874.) At that time, the party is under an obligation to inquire further to determine whether an actionable wrong has been committed. *Nolan*, 85 Ill. 2d at 171, 421 N.E.2d at 868.

■■ ■ The point at which the injured person becomes possessed of sufficient information concerning his injury and its cause to trigger the running of the limitations period is usually a question of fact (*Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 416, 430 N.E.2d 976, 980-81), unless the facts are undisputed and only one conclusion may be drawn from them (*Nolan*, 85 Ill. 2d at 171, 421 N.E.2d at 868-69). In determining whether sufficient information exists as to the injury and its cause, courts often look to the nature of the injury. (*Cramsey*, 191 Ill. App. 3d at 763, 547 N.E.2d at 1363.) Where a traumatic injury occurs, an injured party's knowledge of the injury is immediate because of its nature, whereas when the injury is an aggravation of a

physical problem which may naturally develop, absent negligent causes, neither its existence nor potential wrongful cause may immediately be known. *Lebrecht v. Tuli* (1985), 130 Ill. App. 3d 457, 486, 473 N.E.2d 1322, 1342.

■ After reviewing plaintiff's deposition testimony, we conclude that her testimony does not conclusively establish the requisite knowledge of an injury and its cause before August 1983 because it does not demonstrate that Nicholas knew or should have known of defendants' misdiagnosis. Plaintiff's deposition testimony indicates that in the fall of 1982 a doctor informed Nicholas that he had cancer, but it does not establish that Nicholas was told that the bleeding he experienced at the time defendants examined him was caused by the cancer. In fact, her testimony discloses that doctors repeatedly assured Nicholas, a lay person who plaintiff testified trusted doctors, that the bleeding was due to his hemorrhoids. As late as May 1983, the doctor who diagnosed his cancer so assured him. Not until the fall of 1983, within two years of the filing date, could it be said as a matter of law that plaintiff's deposition testimony established that Nicholas was aware that the cancer caused the bleeding.

Moreover, even assuming *arguendo* that plaintiff's deposition testimony conclusively establishes that Nicholas should have been aware of defendants' misdiagnosis of his bleeding as early as November 1982, the mere awareness of a physical problem and a misdiagnosis does not translate into knowledge of an injury and its wrongful cause as a matter of law. (*Lebrecht*, 130 Ill. App. 3d at 487, 473 N.E.2d at 1343.) The further fact that Nicholas knew the correct diagnosis of his problem also does not translate into knowledge of his injury and its wrongful cause here because the evidence does not establish that Nicholas knew the result of the misdiagnosis in November 1982. The basis of Nicholas' action is not that defendants' misdiagnosis caused his cancer, but that their failure to properly diagnose his cancer resulted in the progression of the cancer. Because Nicholas was told that all the cancer was removed in November 1982, it cannot be said as a matter of law that he should have had knowledge of his injury or even that defendants' misdiagnosis caused him any harm. Not until the fall of 1983, within two years of the date Nicholas filed his action, when the proctoscopy examination revealed the cancer had recurred and when Nicholas was informed of the cancer's progression, could it be found as a matter of law that Nicholas should have been aware of his injury and the possibility that defendants' misdiagnosis was the cause.

The circuit court, therefore, erroneously determined that plaintiff's deposition testimony established as a matter of law that her wrongful

death and survival actions were not filed within the limitations period. The question of whether Nicholas knew or should have known of his injury and its cause before the fall of 1983 should have been a question to be determined by the jury.

■ ■ Finally, plaintiff has abandoned on appeal her count seeking recovery under the family expense statute. Nonetheless, we find that the circuit court properly dismissed this count as time barred.[1] Although such an action is derivative, since the right of action arises out of the injury to the person of another, it is not an action for damages for injuries but is an action for damages *arising from the spouse's liability* under the family expense act. (See *Severe v. Miller* (1983), 120 Ill. App. 3d 550, 555, 458 N.E.2d 173, 177.) As such, the applicable limitations period is that set forth in section 13—203 of the Code of Civil Procedure, which provides:

> "Actions for damages for loss of consortium *or other actions deriving from injury to the person of another* shall be commenced within the same period of time as actions for damages for injury to such other person." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 110, par. 13—203.)

Because a plaintiff under this section has the same period of limitation as the person from whom the action is derived (*Severe v. Miller*, 120 Ill. App. 3d at 555, 458 N.E.2d at 176), plaintiff had two years from the date of *Nicholas' discovery* of his action and no later than four years of the negligent acts to bring the action pursuant to the limitations statute applicable to Nicholas' action.

■■■ Even though plaintiff has the same limitations period as Nicholas, her family expense statute count in the amended complaint does not relate back to the date Nicholas filed his original complaint because the action is based upon her liability under the family expense statute. In *McGinnis v. A.R. Abrams, Inc.* (1986), 141 Ill. App. 3d 417, 422, 490 N.E.2d 115, 118, the court held that although the wife's consortium action was inextricably connected to her husband's original complaint for personal injury, it was still a separate cause of action of a new party and did not relate back to his complaint. In *Joyce v. Wilner* (1987), 156 Ill. App. 3d 702, 509 N.E.2d 769, this rea-

---

[1] The parties did not address plaintiff's count under the Illinois family expense act on appeal or in the circuit court. An appellate court, though, may affirm a judgment below on the basis of a legal ground not argued either in the lower court or on appeal where the ground has factual support in the record. *Ogden Group, Inc. v. Spivak* (1981), 92 Ill. App. 3d 932, 416 N.E.2d 393; *Redd v. Woodford County Swine Breeders, Inc.* (1977), 54 Ill. App. 3d 562, 370 N.E.2d 152; *Collins v. Towle* (1972), 3 Ill. App. 3d 753, 279 N.E.2d 172.

soning was adopted in an action under the family expense statute. The court there found that the plaintiffs' amended complaint in their individual capacities as parents for medical, funeral and hospital expenses pursuant to the family expense statute related back to the date of their original complaint alleging wrongful death in their capacities as co-administrators because, unlike *McGinnis*, the parties in both the actions before it were the same, the only difference being the capacities in which they brought their action. *Joyce*, 156 Ill. App. 3d at 707, 509 N.E.2d at 771-72.

In the case at bar, since plaintiff's count under the family expense statute, filed on December 1986, is a new action by a new party, it does not relate back to Nicholas' complaint for personal injuries. The action, therefore, is time barred, as it was brought more than four years after the alleged acts of negligence.

Affirmed in part; reversed in part and remanded.

CAMPBELL and O'CONNOR, JJ., concur.