IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT JACKSON

FILED

Feb. 20, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

JOSEPH CHIDESTER and wife,    )
KATHLEEN CHIDESTER,    )
    )
    Plaintiffs/Appellants,    ) Tipton Circuit No. 4193
    )
VS.    ) Appeal No. 02A01-9602-CV-00029
    )
L. D. ELLISTON, O.D.,    )
    )
    Defendant/Appellee.    )

APPEAL FROM THE CIRCUIT COURT OF TIPTON COUNTY
AT COVINGTON, TENNESSEE
THE HONORABLE JOSEPH H. WALKER, III, JUDGE

**STEPHEN R. LEFFLER**
**LINDA D. FUTRELL**
Memphis, Tennessee
Attorneys for Appellants

**WILLIAM W. DUNLAP, JR.**
Memphis, Tennessee
Attorney for Appellee

**REVERSED AND REMANDED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**DAVID R. FARMER, J.**

**HOLLY KIRBY LILLARD, J.**

In this medical malpractice action, the Plaintiffs, Joseph and Kathleen Chidester,

filed suit against the Defendant, Dr. L. D. Elliston, for failing to diagnose the Plaintiff's malignant tumor. The trial court granted the Defendant's motion for summary judgment holding that the Plaintiffs' cause of action is barred by the one year statute of limitations. The Plaintiffs' have appealed the trial court's order arguing that the statute of limitations does not bar this action because the Plaintiffs' cause of action did not accrue until the Plaintiff's malignancy recurred. For the reasons stated hereafter, we reverse the judgment of the court below and remand.

**FACTS**

In February of 1992 while on vacation in Arizona, the Plaintiff developed a sinus infection and noticed the presence of blood in his urine. The Plaintiff visited Dr. Charles Ballanger at the Paradise Valley Emergency Center in Phoenix, Arizona. Dr. Ballanger prescribed certain medications for the Plaintiff's sinus infection and told the Plaintiff to visit a doctor when he returned home concerning the presence of blood in his urine.

On March 10, 1992, the Plaintiff visited the Defendant and complained of a sinus infection and the presence of blood in his urine. The Defendant conducted a urinalysis which revealed both red and white blood cells in the Plaintiff's urine. The Defendant diagnosed the Plaintiff as having a kidney infection and prescribed several medications. On March 17, 1992, the Plaintiff again visited the Defendant and complained of blood in his urine. The Defendant advised the Plaintiff to remain on the medication that he had previously prescribed. In July of 1992, blood reappeared in the Plaintiff's urine, and the Plaintiff visited the Defendant and again complained of the presence of blood in his urine. The Defendant then prescribed a different medication for the Plaintiff.

On December 22, 1992, the Plaintiff sought the advice of another general practice physician, Dr. Jeffrey May. Dr. May scheduled the Plaintiff for an intravenous pyelogram which revealed the presence of a malignant tumor on the Plaintiff's right kidney. Dr. May referred the Plaintiff to a urologist, Dr. Richard Pearson, who removed the Plaintiff's right

2

kidney along with the malignant tumor attached to it on January 18, 1993.

After the removal of the Plaintiff's right kidney, Dr. Pearson told the Plaintiff that he should have no further problems with the malignancy since the tumor was confined to the right kidney which was removed. Dr. Pearson examined the Plaintiff periodically in 1993 after the Plaintiff's surgery in order to monitor the Plaintiff's progress.

In December of 1993, Dr. Pearson performed a CAT scan on the Plaintiff which revealed the recurrence of a malignant tumor in the area where the Plaintiff's right kidney with the malignancy once had been. Dr. Pearson referred the Plaintiff to an oncologist, Dr. Schwartzberg.

In order to treat the second malignant tumor, the Plaintiff underwent a course of chemotherapy from February through March of 1994 and a second surgery in May of 1994. On November 10, 1994, the Plaintiffs filed their complaint.

## LAW

The issue before this Court is whether the trial court erred in granting the Defendant's motion for summary judgment based upon the one year statute of limitations contained in T.C.A. § 29-26-116 (1980).

This Court reviews the trial court's grant of summary judgment *de novo* upon the entire record with no presumption of correctness. Cowden v. Sovran Bank/Central South, 816 S.W.2d 741, 744 (Tenn. 1991); Foley v. St. Thomas Hosp., 906 S.W.2d 448, 452 (Tenn. Ct. App. 1995); Brenner v. Textron Aerostructures, A Division of Textron, Inc., 874 S.W.2d 579, 582 (Tenn. Ct. App. 1993). No presumption of correctness attaches to decisions granting summary judgment because they evoke only questions of law. Foley, 906 S.W.2d at 452. Thus, we must make a fresh determination on appeal as to whether or not the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been

3

met. Id.; Hill v. City of Chattanooga, 533 S.W.2d 311, 312 (Tenn. Ct. App. 1975).

While the summary judgment procedure is not a substitute for trial, it goes to the merits of the complaint and should not be taken lightly. Byrd v. Hall, 847 S.W.2d 208, 210 (Tenn. 1993); Jones v. Home Indem. Ins. Co., 651 S.W.2d 213, 214 (Tenn. 1983); Fowler v. Happy Goodman Family, 575 S.W.2d 496, 498 (Tenn. 1978); Foley, 906 S.W.2d at 452. It has been repeatedly stated by the appellate courts of this state that the purpose of a summary judgment proceeding is not the finding of facts, the resolution of disputed factual issues or the determination of conflicting inferences reasonably to be drawn from the facts. Bellamy v. Federal Express Corp., 749 S.W.2d 31, 33 (Tenn. 1988). Rather, the purpose of summary judgment is to resolve controlling issues of law. Id.

In evaluating the propriety of a motion for summary judgment, we must first determine whether a genuine issue of material fact exists. Tenn. R. Civ. P. 56. In doing so, we must consider the pleadings and the evidentiary materials in the light most favorable to the movant's opponent and draw all reasonable inferences in the opponent's favor. Byrd, 847 S.W.2d at 210.

> In a malpractice action, the plaintiff has the burden of proving:
>
>> (1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which he practices or in a similar community at the time the alleged injury or wrongful action occurred;
>> (2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
>> (3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

T.C.A. § 29-26-115 (1980).

Pursuant to T.C.A. §29-26-116(a)(1), the statute of limitations for malpractice actions is one year. However, in the event that the alleged injury is not discovered within the one year period, the limitations period is one year from the date from which the plaintiff discovers his or her injury. T.C.A. §29-26-116(a)(1) (1980). Thus, under Tennessee law, a statute of limitations begins to run when the plaintiff discovers or, in the exercise of

reasonable care and diligence for his own health and welfare, should have discovered the resulting injury. Teeters v. Currey, 518 S.W.2d 512, 517 (Tenn. 1974); McCroskey v. Bryant Air Conditioning Co., 524 S.W.2d 487, 491 (Tenn. 1975); Roe v. Jefferson, 875 S.W.2d 653, 656 (Tenn. 1994); Wyatt v. A-Best Products Co., Inc., 924 S.W.2d 98, 103 (Tenn. Ct. App. 1995).

In the present case, the trial court held that the Plaintiffs' cause of action for medical malpractice accrued in January of 1993 when the Plaintiff was told that a malignant tumor measuring two inches in diameter was present on the Plaintiff's right kidney. The Plaintiffs, however, argue that their cause of action did not accrue until December of 1993 when the Plaintiff's cancer recurred. The Plaintiffs contend that their cause of action for medical malpractice did not accrue in January of 1993 because the Plaintiffs suffered no damages in January of 1993 as a result of the Defendant's misdiagnosis. The Plaintiff's malignant tumor on his right kidney existed regardless of the Defendant's misdiagnosis of the Plaintiff's condition. Thus, the Plaintiffs' cause of action is not based upon the Plaintiff's cancer. Rather, the Plaintiffs' complaint is based upon the metastasis of the Plaintiff's cancer. The Plaintiffs argue that the Plaintiff's cancer would not have reappeared in December of 1993 had the Defendant properly diagnosed the Plaintiff's condition in March of 1992. In support of their argument, the Plaintiffs present the affidavits of two physicians who both testified that the chemotherapy treatments in February and March of 1994 and the second surgery in May of 1994 may not have been necessary if the Plaintiff's malignant tumor had been detected and treated in March of 1992 by the Defendant.

Therefore, the Plaintiffs argue that they did not know or have reason to know of their malpractice cause of action until December of 1993. The Plaintiffs contend that they were not put on notice of any injury resulting from the Defendant's misdiagnosis until December of 1993 when Dr. Pearson performed a CAT scan on the Plaintiff which revealed the recurrence of a malignant tumor in the area where the Plaintiff's right kidney with the malignancy once had been. Because the element of damages is essential in bringing an action for medical malpractice, the Plaintiffs' assert that their cause of action did not accrue

5

until December of 1993 when the Plaintiffs were first put on notice of the injury resulting from the Defendant's misdiagnosis of the Plaintiff's condition.

We have not yet had the opportunity to address the issue of when a medical malpractice cause of action accrues where there is no actionable injury as a result of a defendant's misdiagnosis of cancer other than the metastasis or the recurrence of the cancer. In considering this issue, we have looked to case precedent from other jurisdictions which have addressed the same issue.

In Johnson v. Mullee, 385 So.2d 1038 (Fla. Dist. Ct. App. 1980), the Court of Appeals for the State of Florida confronted the same issue. In Johnson, the defendant physician performed a breast examination on the plaintiff on September 22, 1972. Johnson, 385 So.2d at 1039. The defendant found "diffusely cystic areas" in the plaintiff's left breast but did not investigate the nature of those lumps. On March 7, 1973, the plaintiff consulted her father, a surgeon, who examined her breast. A biopsy was performed which revealed the existence of a malignant tumor in the plaintiff's breast. The plaintiff underwent a radical mastectomy on March 12, 1973. Pathology reports on the removed tissues revealed cancer of the plaintiff's left breast with metastasis to three auxiliary lymph nodes. In February of 1975, a bone scan was performed upon the plaintiff which showed that the cancer had spread to the plaintiff's ribs and skull. The plaintiff filed her medical malpractice cause of action on November 29, 1976. The court held that the plaintiff's cause of action did not accrue until February of 1975. The Johnson court reasoned as follows:

> It was in February 1975 that she [the plaintiff] first learned that the cancer had metastasized beyond the surgically removed portions. From the evidence presented, there is no basis on which to conclude that her cause of action should have been discovered with due diligence prior to that time. Although she had a basis for belief that appellee doctor [the defendant] was negligent in not discovering her cancer, the evidence is to the effect that, had he discovered the cancer at that time, she would have been required to undergo the same radical mastectomy, which she later had. At the time the radical mastectomy was performed, she had no cause of action against appellee doctor because there was no evidence that his alleged negligence had resulted in any harm to her. It was only in February 1975, when the cancer appeared in other parts of her body, that she discovered her cause of action. It was only then that she could have known she had been harmed by the alleged negligent diagnosis.

6

<u>Johnson</u>, 385 So.2d at 1040. Thus, the court in <u>Johnson</u> concluded that even though the plaintiff knew that the defendant had misdiagnosed her condition in March of 1973, the plaintiff's cause of action did not accrue until February of 1975 because it was not until February of 1975 that the plaintiff knew that she had been damaged as a result of the defendant's misdiagnosis.

The Illinois Appellate Court addressed the same issue in <u>Janetis v. Christensen</u>, 558 N.E.2d 304 (Ill. App. Ct. 1990). On April 7, 1982, the plaintiff visited the defendant and complained of rectal bleeding. <u>Janetis</u>, 558 N.E.2d at 305. The defendant informed the plaintiff that the bleeding was due to hemorrhoids and recommended no treatment. <u>Id</u>. at 305-6. The plaintiff visited the defendant again on July 29, 1982 because of his continual bleeding, but the defendant diagnosed the problem as hemorrhoids and stated that "there is nothing to worry about." <u>Id</u>. at 306. In October of 1982, another physician, Dr. Moore, examined the plaintiff. The plaintiff underwent a proctoscopy and a biopsy at Dr. Moore's request. In November of 1982, Dr. Moore told the plaintiff that he did have cancer but surgery would rectify the problem. The plaintiff was admitted to the hospital the next day, and Dr. Parenti surgically removed part of the plaintiff's colon. Following the surgery, Dr. Parenti told the plaintiff that "everything was all right" and that he was very pleased with the outcome. In three subsequent visits to Dr. Parenti, "everything was going well," and there were no problems. In May of 1983, the plaintiff returned to Dr. Moore because he again experienced rectal bleeding. Dr. Moore informed the plaintiff that the bleeding was due to hemorrhoids and that there was no problem. The plaintiff returned to Dr. Moore in the fall of 1983, and a proctoscopy examination revealed that the cancer had recurred. The court in <u>Janetis</u> stated as follows:

> Because [the plaintiff] was told that all the cancer was removed in November 1982, it cannot be said as a matter of law that he should have had knowledge of his injury or even that defendants' misdiagnosis caused him any harm. Not until the fall of 1983, within two years of the date [the plaintiff] filed his action, when the proctoscopy examination revealed the cancer had recurred and when [the plaintiff] was informed of the cancer's progression, could it be found as a matter of law that [the plaintiff] should have been aware of his injury and the possibility that the defendants' misdiagnosis was the cause.

<u>Id</u>. at 308. Although the plaintiff knew that the defendant misdiagnosed his condition in

November of 1982, the Janetis court reversed the trial court's grant of summary judgment in favor of the defendant based upon the statute of limitations and held that the question of whether the plaintiff knew or should have known of his injury and its cause before the fall of 1983 should have been a question determined by the jury.

In Wolf v. Bueser, 664 N.E.2d 197, 201-2 (Ill. App. Ct. 1996), the court cited the cases of Johnson v. Mullee and Janetis v. Christenson and agreed with their rationale. The court in Wolf reversed the trial court's order which dismissed certain negligence counts against a defendant physician because the plaintiff could possibly prove that her cause of action for metastasis of undiagnosed breast cancer did not accrue until the cancer recurred. The Wolf court agreed with a line of authority holding that where there is no actionable injury resulting from a misdiagnosis of cancer other than the metastasis or recurrence of the cancer, a plaintiff's cause of action accrues on the discovery of the metastasis or recurrence. The court in Wolf stated as follows:

> A cause of action accrues only when all the elements of the cause of action are present: duty, breach, and resulting injury or damage. Without accrual there can be no cause of action, and there is no cause of action until injury or damage has occurred. (internal citations omitted)

Id. at 204.

Because a cause of action for medical malpractice does not accrue until the plaintiff can prove that he has been damaged as a result of a defendant's negligent act or omission, we disagree with the trial court's order holding that the Plaintiff's cause of action accrued in January of 1993 when the plaintiff's right kidney was removed. The Plaintiff was put on notice of the defendant's misdiagnosis of his condition in January of 1993; however, it cannot be said as a matter of law that the Plaintiff knew or should have known that he had been damaged as a result of the Defendant's misdiagnosis. It is likely that the Plaintiff's right kidney would have had to have been removed regardless of the Defendant's misdiagnosis of the Plaintiff's condition.[1] Based upon the record before us, we conclude that a genuine issue of material fact exists as to when the Plaintiff's injury occurred and,

---

[1] The only evidence on this issue suggests that removal of the Plaintiff's kidney would have been required even if the Defendant's initial diagnosis of the Plaintiff's condition had been correct.

8

hence, when the Plaintiff knew or should have known of his cause of action against the Defendant. We, therefore, reverse the trial court's order granting summary judgment in favor of the Defendant based upon the statute of limitations.

The judgment of the trial court is hereby reversed and the cause is remanded. Costs on appeal are taxed to the Appellee, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:


_____
FARMER, J.


_____
LILLARD, J.